The STATE of Ohio, Appellee,

v.

SUBER, Appellant.

[Cite as *State v. Suber* (1997), 118 Ohio App.3d 771.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE06–786.

Decided March 13, 1997.

772

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, *Joyce S. Anderson* and *Diane Paul,* Assistant Prosecuting Attorneys, for appellee.

*Dianne Goss,* for appellant.

JOHN C. YOUNG, Judge.

Appellant, Bryant K. Suber, was indicted by the Franklin County Grand Jury on one count of carrying a concealed weapon with the specification of having been previously convicted of an offense of violence, in violation of R.C. 2923.12. A hearing on a motion to suppress was held on April 22, 1996, and the motion was overruled by the trial court. Following a jury trial, appellant was convicted of

carrying a concealed weapon. The specification concerning a prior conviction was dismissed. Appellant was sentenced to serve two years at the Ohio Department of Rehabilitation and Correctional Center.

Thereafter, appellant filed a notice of appeal and sets forth the following assignments of error for this court's consideration:

"I. The trial court erred in adding to the jury's instructions the statement that 'a deadly weapon need not be entirely hidden to be concealed.'

"II. The trial court erred in denying defendant's motion for a mistrial and overruling his objections to two prejudicial instances of prosecutorial misconduct which occurred during closing arguments.

"III. The trial court erred in ruling that a weapon can be both 'in plain view' to support a search and 'concealed' to support a conviction for carrying a concealed weapon.

"IV. Defendant's conviction was contrary to the manifest weight of the evidence and must be reversed."

During the early morning hours on September 11, 1995, Columbus police officers, who were on foot patrol in the hilltop area, radioed that they had heard shots fired. Officers Charles Sutherland and James Marsh were two of the police officers who responded to the call in the area of Warren and Sullivant Avenues. Officer Marsh was flagged down by an individual who told him that the suspect vehicle, a white or yellow station wagon, just went east on Wicklow. Officer Marsh aired that description and, within seconds, Officer Sutherland aired that he had just passed a vehicle which matched that description and that he was going to stop the vehicle. Officer Sutherland saw only one individual in the vehicle and, as he turned his cruiser around in order to get behind the vehicle, Officer Sutherland observed it pull over to the side of the street and he observed the driver get out. The individual, appellant herein, walked to the sidewalk and was joined by another individual. Officer Sutherland approached appellant and the other individual and began talking with them. Within seconds, Officer Marsh responded to the scene and got out of his cruiser. Officer Marsh approached the suspect vehicle and shined his flashlight into the interior, looking for weapons. While looking through the rear passenger window on the driver's side, Officer Marsh observed what he believed to be a gun. According to his testimony, Officer Marsh observed the trigger guard and a part of the stock of the gun. He estimated that he was able to see approximately one-third of the gun. Furthermore, Officer Marsh testified that he was not able to see the gun when he looked through the front windows on either side of the car. Officer Sutherland placed appellant in the cruiser and approached the suspect vehicle. He too was able to see what he believed to be a gun when he looked through the rear passenger

window on the driver's side. The majority of the gun was underneath the front seat and was not visible to the officers. According to Officer Marsh, a banana clip, which fit the rifle found in the car, was located in the back with the rifle; however, Officer Sutherland believed that the banana clip was found on the front seat. A paper bag was located on the front seat of the car and the bag contained thirty-nine live rounds of ammunition that fit in the rifle found in the back of the car. Officer Marsh estimated that it would have taken approximately thirty seconds for appellant to have loaded three to four rounds of ammunition in the gun. According to the testimony of Mark Hardy, a criminalist with the Columbus Police Department Crime Lab, the gun recovered from appellant's vehicle was operable and the ammunition found in the brown paper bag fit the gun and was test-fired from the gun.

Judy Stewart, who resides at 343 South Warren, testified that appellant is her brother-in-law. In the early morning hours of September 11, 1995, appellant came to her house because he was upset that her son was in jail. Stewart testified that she saw the banana clip in appellant's hand. Appellant was very angry. Almost immediately after appellant left, Stewart heard gunshots. Stewart testified that she was going to call the Columbus Police Department, but that the policemen were already on the scene. Stewart did not see appellant fire the gun.

Appellant testified on his own behalf. Appellant admitted that he owned the station wagon in which the gun was located and that he owned the gun. However, appellant testified that the gun was on the back seat of the car. Appellant testified that there was another individual in the car with him whose name is Bob Barker. Appellant admitted that he went to his sister-in-law's house that night but he denied that he took either the gun or the gun clip into the house. Furthermore, appellant indicated that he did not know that there was any ammunition for the gun in the car and that the ammunition recovered was not his.

In his first assignment of error, appellant argues that the trial court erred when it instructed the jury as to the offense of carrying a concealed weapon. The offense of carrying a concealed weapon is defined in R.C. 2923.12 as follows:

"(A) No person shall knowingly * * * have * * * concealed ready at hand, any deadly weapon * * *."

When the trial court instructed the jury on the offense of carrying a concealed weapon, defense counsel objected to one sentence contained within a particular paragraph of the charge. Likewise, on appeal, appellant has assigned as error the italicized sentence found within the following paragraph of the charge given to the jury by the trial court:

"A deadly weapon is concealed when it is out of sight or so hidden that it cannot be seen by ordinary observation by others near enough to see it. It is a question of fact for you, the jury, to decide whether or not it is concealed. *A deadly weapon need not be entirely hidden to be considered concealed.*" (Emphasis added.)

Appellant argues that the italicized sentence in the above paragraph removed from the jury the issue of whether the weapon was concealed. Appellant contends that the trial court essentially instructed the jury that the partially concealed weapon was "concealed" as a matter of law. For the reasons which follow, this court finds that appellant's assignment of error is not well taken.

The record indicates that the trial judge included the above-italicized sentence within the charge to the jury because case law in Ohio had held that a partially concealed weapon can be found to be "concealed" within the meaning of the statute. The trial court specifically cited the case of *State v. Almalik* (1987), 41 Ohio App.3d 101, 534 N.E.2d 898, in support of its decision to include the above-italicized sentence. In *Almalik,* the Cuyahoga County Court of Appeals noted that it had previously held that a partially concealed weapon can be "concealed" within the meaning of R.C. 2923.12. See, also, *State v. Pettit* (1969), 20 Ohio App.2d 170, 49 O.O.2d 200, 252 N.E.2d 325; *State v. Davis* (1984), 15 Ohio App.3d 64, 15 OBR 93, 472 N.E.2d 751; *State v. Coker* (1984), 15 Ohio App.3d 97, 15 OBR 127, 472 N.E.2d 747.

Appellant seems to believe that the sentence added by the trial court took away from the jury the responsibility of making the factual determination as to whether the weapon was concealed; however, appellant's argument is not well taken. Even with the inclusion of the above-italicized sentence, it is still the responsibility of the jury to make the determination as to whether or not, under the facts of each particular case, the weapon is concealed as above stated. In order to find a defendant guilty of carrying a concealed weapon, the jury must still find that the weapon is "out of sight or so hidden that it cannot be seen by ordinary observation by others near enough to see it." Even this court, in *State v. Bowman* (1992), 79 Ohio App.3d 407, 607 N.E.2d 516, stated that:

"In order to support a conviction of carrying a concealed weapon, it is not necessary to prove that the weapon was carried in such a manner or in such a location as to give absolutely no notice of its presence under any kind of ordinary observation; rather, it is sufficient to prove only that ordinary observation would give no notice of its presence." *Id.* at 412, 607 N.E.2d at 520.

As such, given a certain set of facts, a deadly weapon does not need to be entirely hidden from view in order to be considered "concealed" for purposes of R.C. 2123.12.

Appellant's first assignment of error is not well taken and is overruled.

In his second assignment of error, appellant argues that the trial court erred in denying his motion for mistrial and overruling his objections to two prejudicial instances of prosecutorial misconduct which occurred during closing arguments. Appellant directs this court's attention to two instances wherein he alleges that prosecutorial misconduct occurred. The record reveals the following with regard to the first instance:

"MR. CABLE [PROSECUTOR]: What the officers and lab technician tell you about this case is that this is a deadly weapon. The lab technician told you that, the officers I believed [sic] will tell you that, and did. By the officers' testimony at the scene, this weapon was concealed.

"MR. JELEN [DEFENSE COUNSEL]: Your honor, I object to this.

"THE COURT: Objection to what?

"MR. JELEN: His demonstration.

"THE COURT: I can't see it.

"MR CABLE: That's my point.

"THE COURT: Oh.

"MR. JELEN: Your Honor, I object. I move for a mistrial.

"THE COURT: The objection is overruled."

A review of the remainder of the record indicates that the prosecutor had the weapon which was taken from appellant's car behind the podium as he was addressing the jury during closing arguments, and that the weapon was placed in such a manner that only that portion of the weapon to which Officer Sutherland testified could be seen that night was showing. The second instance of alleged prosecutorial misconduct occurred as follows:

"[PROSECUTOR]: The defense attorney and Defendant, they discussed this case. He knows what could get him off the hook in this case, he knows what—

"MR. JELEN: I object to that, Your Honor. That's improper.

"THE COURT: The objection is overruled."

"The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885. This court must consider the two objections and the trial

court's rulings thereon and determine whether the cumulative effect was to so infect the trial with unfairness as to make a resulting conviction a denial of due process. *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436–437; *State v. DePew* (1988), 38 Ohio St.3d 275, 288, 528 N.E.2d 542, 556–557 (quoting *Donnelly*).

■ With regard to the first instance wherein the prosecutor brought out the weapon which was found in appellant's car to show the jury, this court does not find that action to have amounted to prosecutorial misconduct. Both Officers Sutherland and Marsh specifically testified as to how much of the weapon had been visible. Furthermore, while holding the weapon, Officer Sutherland had demonstrated to the jury how much of the weapon was visible. As such, the prosecutor's demonstration was based upon the facts as presented to the jury through the testimony of the officers. Appellant also points to the fact that, when the trial judge indicated that he could not see the demonstration, the prosecutor responded, "That's my point." Looking at this comment by the prosecutor from appellant's perspective, this court can see how counsel could perceive the comment as improper. However, from another perspective, the prosecutor's demonstration did demonstrate for the jury that a weapon could be concealed from view from one vantage point while still being observable from another vantage point. This court cannot conclude that either the statement or the demonstration was such that it deprived appellant of a fair trial.

■ With regard to the second instance, the prosecutor wrongly intimated that counsel would instruct his client to be less than honest. In perhaps the more egregious wrong, as a premise to that remark, he commented on appellant's discussions with his attorney, suggesting that those discussions were the source of appellant's lack of truthfulness. Appellant has a constitutional right to confer with counsel, and the prosecution may not impinge on that right through remarks such as those made here.

■ Nonetheless, while defendants are entitled to a fair trial, a fair trial does not necessarily mean a "perfect trial." Given the largely undisputed evidence supporting appellant's conviction, this court cannot find that the cumulative effect of the two instances would so infect the trial with unfairness as to make the resulting conviction a denial of due process. Therefore, appellant's second assignment of error is overruled.

Appellant's third and fourth assignments of error are interrelated and will be addressed together. Appellant argues that the trial court erred in ruling that a weapon could be both "in plain view," for purposes of denying his motion to suppress, and "concealed" in order to support a conviction for carrying a concealed weapon, and that his conviction was against the manifest weight of the

evidence. For the reasons that follow, appellant's third and fourth assignments of error are not well taken and are overruled.

This court has given considerable consideration to appellant's argument that a single gun cannot logically be simultaneously concealed and in plain view. Contrary to appellant's assertion, this court finds that, under certain specific facts, a single gun can be both "in plain view" for purposes of search and seizure, and "concealed" for purposes of sustaining a conviction for carrying a concealed weapon.

Under the plain-view doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the discovery of the item was lawful and it was immediately apparent that the item was incriminating. *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819, 833. In the present case, the police responded to a call of shots being fired, obtained a description of appellant's vehicle, and appellant's vehicle was seen within moments by a police officer who then prepared to stop appellant. Before Officer Sutherland could activate his lights and siren, appellant pulled his automobile over to the curb and got out of his automobile. While Officer Sutherland was talking with appellant, Officer Marsh looked into appellant's vehicle with his flashlight. Appellant has not attempted to make any argument that the stop by the police would have been unlawful or that Officer Marsh was not lawfully looking in the windows of his vehicle. Based upon the testimony of both Officers Sutherland and Marsh, they observed what they believed to be a rifle underneath the front seat of appellant's vehicle. Approximately one-third of the rifle was visible through the back passenger window on the driver's side. Although the weapon was not in a position to be detected by ordinary observation (*i.e.*, if the police officers had stopped the car and appellant had remained in the car and had the officers approached the vehicle and spoken to appellant through the driver's side window), the weapon was in plain view when the officers looked through the windows in a nonordinary fashion. Based upon the description given to the police, the police had reason to believe that there was a weapon in appellant's car. Without opening the doors to the car, the police officers were able to see a weapon that would not have been immediately apparent to them had they looked into the car only through the front windows of either the driver or the passenger sides.

One Summit County opinion and two unreported Cuyahoga County opinions have found that a gun can be both concealed and in plain view. See *Coker, supra; State v. Young* (May 7, 1987), Cuyahoga App. No. 51984, unreported, 1987 WL 11187; *State v. Dixon* (Dec. 24, 1987), Cuyahoga App. No. 53197, unreported, 1987 WL 30357. Appellant argues that this court expressed its doubts that a weapon can be both concealed for purposes of the offense charged and in plain

view for purposes of the search in *State v. Kistler* (Nov. 6, 1986), Franklin App. Nos. 86AP–289 and 86AP–301, unreported, 1986 WL 12919. However, *Kistler* is not dispositive given the facts of this case. In *Kistler,* defendant and another were observed engaging in activity which the officer thought was suspicious. In the course of the officer's investigation, he was not satisfied with the answers given by defendant and placed defendant in the back of his cruiser. Because the officer did not also get into the cruiser, he did not pat down the defendant at that time. When the defendant entered the cruiser, the officer did not notice any firearms in plain view about her person. After making further inquiries, the officer asked defendant to step out of the cruiser. It was at that time that the officer noticed the shape of a handgun in her back pocket and removed it. This court agreed that, under the plain-view doctrine, when a police officer sees the outline of a firearm in a person's pocket, the officer may remove the firearm because it is in plain view when the officer first becomes aware of it. The fact that the situation in *Kistler* involved two different points in time when the officer was in the defendant's presence is immaterial to the present case. Pursuant to R.C. 2923.12, ordinary citizens are not permitted to knowingly carry or have concealed, on their person or ready at hand, any deadly weapon. This would include a situation where a person had a firearm in their pocket. The fact that a police officer could see the outline of the weapon would not render the weapon not concealed. The language of *Kistler* to which appellant directs this court's attention is very fact-specific to that case alone and does not stand for the proposition that a weapon cannot be both in plain sight for purposes of search and seizure and concealed for purposes of carrying a concealed weapon.

Appellant's third assignment of error is not well taken and is overruled.

The standard for determining whether a judgment in a criminal case is against the manifest weight of the evidence has been set forth by the Ohio Supreme Court in *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus, which states:

"A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court."

In considering the manifest weight of the evidence, the reviewing court weighs the evidence in a limited sense to determine whether there is sufficient, competent, credible evidence to permit reasonable minds to find the defendant guilty beyond a reasonable doubt. Further, an appellate court must ordinarily defer to the factfinder's resolution of factual and credibility issues. *Id.*

■ The evidence before the jury was sufficient to support appellant's conviction. Appellant was seen in the vicinity of the area where shots were fired almost immediately after those shots were fired. Officer Marsh was given a description of appellant's vehicle and he aired that description. Within moments, Officer Sutherland observed the appellant's vehicle and maneuvered his cruiser to initiate a stop. Before Officer Sutherland could stop appellant's vehicle, appellant pulled his vehicle over to the curb and was seen by Officer Sutherland getting out of the vehicle. Moments later, Officer Marsh arrived on the scene, approached the vehicle, and while looking through the rear window on the driver's side, he observed the trigger guard and a portion of the butt of a rifle sticking out from underneath the front seat. Officer Sutherland corroborated this testimony and indicated that, based upon what was visible, he believed that there was a gun in the car. A paper bag full of ammunition was recovered from the front seat and a clip for the gun was found either on the front seat with the ammunition or on the floor with the gun. The gun was operable and the ammunition found on the front seat fit the gun. Officer Marsh estimated that it would have taken approximately thirty seconds to load three or four rounds into the gun, and Officer Sutherland testified that the gun was accessible by reaching over the front seat. Based upon the above evidence, the jury could reasonably conclude that appellant knowingly had a deadly weapon concealed and ready at hand. Appellant's fourth assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PEGGY BRYANT and PETREE, JJ., concur.