**The STATE of Ohio, Appellee,**

**v.**

**CROCK, Appellant.**

[Cite as *State v. Crock* (1998), 126 Ohio App.3d 439.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 96–BA–3.

Decided Feb. 25, 1998.

*Frank Pierce,* Belmont County Prosecuting Attorney, and *Robert W. Quirk,* Assistant Prosecuting Attorney, for appellee.

*Albert E. Davies III,* for appellant.

GENE DONOFRIO, Presiding Judge.

Defendant-appellant, Pamela A. Crock, appeals a decision from the Belmont County Court, Western Division, wherein appellant was found guilty of violating R.C. 2923.16(C), improperly handling a firearm in a motor vehicle.

On September 11, 1995, at approximately 11:57 a.m., appellant was stopped while traveling west on Interstate 70 by Trooper David L. Jerico of the Ohio State Highway Patrol. The basis for the stop was that the Ohio State Highway Patrol post dispatcher in St. Clairsville received a phone call from an unidentified individual, alleging that appellant was possibly suicidal and possibly had a weapon in her vehicle.

At the time of the stop, Trooper Jerico was assisted by Troopers Weldon and Klier, who arrived in a separate vehicle. Troopers Weldon and Klier were precluded from testifying at trial due to the prosecutor's failure to disclose them as witnesses prior to trial.

Trooper Jerico testified that after he had located and stopped appellant's vehicle, he walked up to the driver's side window and requested appellant's driver's license and registration. Trooper Jerico noted that appellant's windows were tinted and that appellant's driver's side window was down approximately one to one-half inches at the most. As Trooper Jerico approached appellant's window, Troopers Weldon and Klier placed road spikes underneath appellant's tires, believing that appellant might attempt to leave the scene. Trooper Jerico testified that Trooper Weldon then spoke to appellant for approximately five to ten minutes, explaining to appellant why she had been stopped. Appellant then put her window down a little more, enough to allow Trooper Klier to reach his hand in the window and unlock the door. Trooper Weldon then inquired as to whether appellant had a gun in the vehicle, at which time appellant proceeded to reach down between her seat and the passenger seat and hand over an unloaded .32 caliber Colt revolver. After obtaining the revolver, appellant's vehicle was secured and appellant was transported to Bellaire City Hospital.

On September 14, 1995, Trooper Jerico filed a complaint against appellant, alleging that appellant knowingly transported or had a loaded firearm in a motor vehicle in violation of R.C. 2923.16(B). Arraignment was set for October 5, 1995. On that date, at the request of the state and with the consent of the arresting officer, the complaint was amended to a charge of violating R.C. 2923.16(C), improperly transporting an unloaded firearm. A public defender was provisionally appointed, and appellant's initial appearance was continued to October 12, 1995. On October 12, 1995, a public defender was permanently appointed, and appellant entered a plea of not guilty.

Trial to the court was held on November 28, 1995, at which time appellant was found guilty of violating R.C. 2923.16(C). Appellant was subsequently sentenced to thirty days in jail, all suspended on the condition that appellant pay a $250 fine, plus $61 in costs, and not violate any laws of the state of Ohio or any municipality for one year.

On January 10, 1996, appellant filed a timely notice of appeal.

Appellant has set forth the following assignments of error:

"[1] Defendant–appellant Crock was denied her Sixth Amendment right to effective assistance of counsel by counsel's failure to file a motion to suppress evidence.

"[2] The trial court committed prejudicial error and deprived defendant–appellant Crock of due process of laws guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding her guilty, since there was not an adequate factual basis in the record to support each and every element to the charged offense."

Due to the manner in which we dispose of appellant's second assignment of error, appellant's first assignment of error is rendered moot.

Appellant was found guilty of violating R.C. 2923.16(C). R.C. 2923.16(C) states:

"(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless it is unloaded, and is carried in one of the following ways:

"(1) In a closed package, box, or case;

"(2) In a compartment which can be reached only by leaving the vehicle;

"(3) In plain sight and secured in a rack or holder made for the purpose;

"(4) In plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight."

In her second assignment of error, appellant argues that the state failed to prove each and every element of the offense charged beyond a reasonable doubt. Specifically, appellant contends that the state failed to prove that the weapon was not in plain view. We agree.

In its October 29, 1995 journal entry, the trial court stated:

"The Weapon was carried in a motor vehicle with windows sufficiently tinted to preclude a view of the same from outside the vehicle in 'plainsight.' [*Sic.*]

"Defendant found guilty of violating RC 2923.16(C)."

The evidence produced by the state, via Trooper Jerico, was as follows:

"Jerico: I remember I heard Lt. Weldon—we had gotten the report that there was a gun in the car—and she did have a gun in the car. I can remember that she never said nothing [*sic*], she just kept looking straight ahead. I remember him asking her three or four different times–and then I said I can just see through the back window. She started reaching down with her right hand between the seats and I can remember Lt. Weldon saying 'Pamela, if you have a

gun, don't reach for it, or anything like this [*sic*] and she just kept bringing it up and then she brought it owt [*sic*] and we took it off of her and Lt. Weldon gave it to me.

"Estadt: Okay. You observed her through the window her reach down–did you say between the seats?

"Jerico: Yes. It was a four-door car and she was reaching between the seats...

"Estadt: Were they bucket seats or?

"Jerico: No ma'am.

"Estadt: Could you be more specific? When you say between the seats, which seats are you federring [*sic*] to?

"Jerico: The front seats. She was sitting—there was no one else in the car but her. She was the driver and between her and the passenger's seat on the right side. She was reaching down. I don't know if it was in her pocketbook or just in the car between the two seats." (Ellipsis *sic*.)

It is uncontroverted that appellant produced a gun from the area between herself and the passenger seat. Although the state did establish that the windows were tinted, the state failed to establish, through testimony, that the windows were so darkly tinted that Trooper Jerico could not see through them. More important, the state did not elicit testimony that Trooper Jerico, or any other trooper at the scene, even attempted to look into appellant's car to ascertain whether the weapon was in plain view. Surely it cannot be said that a police officer's failure to look would render an object to be out of "plain view." Consequently, the state has failed to produce evidence to prove each element of the offense charged beyond a reasonable doubt. This decision is limited to the specific facts of this case.

Appellant's second assignment of error is found to have merit. Judgment reversed. Appellant discharged.

*Judgment reversed.*

VUKOVICH and WAITE, JJ., concur.