DECISION AND JUDGMENT ENTRY
Tracy L. Carr appeals the allocation of parental rights and responsibilities and the award of visitation rights in a contested divorce proceeding before the Washington County Common Pleas Court.
Tracy Carr (appellant) and Kevin Carr (appellee) were married in October 1994 and had one child, Dalton A. Carr, in May 1995. Appellant also had a child from a previous relationship, Haley Carr, born in 1990, who lived with the parties throughout the duration of their marriage. Appellee did not adopt Haley, although her name was legally changed to Carr in 1994.
In 1998, appellant filed a complaint for divorce that included a prayer for custody of Dalton. Appellee filed an answer requesting custody of Dalton as well as visitation rights with Haley. Following final hearings on the matter, the Washington County Common Pleas Court issued a judgment designating appellee as Dalton's residential parent and legal custodian, subject to a right of standard visitation in appellant. The court also awarded appellee visitation with Haley one weekend per month. Appellant appeals the trial court's decision in both regards and raises the following assignments of error:
I. THE TRIAL COURT ABUSED ITS DISCRETION TO THE
 PREJUDICE OF THE APPELLANT IN FAILING TO CONSIDER ALL RELEVENT FACTORS IN DECIDING THE ISSUE OF THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES OF DALTON CARR AND OF THE VISITATION WITH HALEY CARR, AND MORE SPECIFICALLY IN FAILING TO CONSIDER THE PARTIES [SIC] RESPECTIVE HISTORY OF ABUSE OF THE OTHER IN THE PRESENCE OF THE CHILDREN.
 II. THE COURT ABUSED IT'S [SIC] DISCRETION IN FAILING TO CONSIDER WHO HAS BEEN THE PRIMARY CARETAKER OF THE CHILD OF THE PARTIES.
 III. THE COURT ABUSED IT'S [SIC] DISCRETION IN FAILING TO CONSIDER APPELLEE'S HISTORY OF ALCOHOL ABUSE WHICH FAILURE CONSTITUTES REVERSIBLE ERROR.
 IV. THE COURT'S FINDING THAT APPELLANT'S RELATIONSHIP WITH SCOTT SHANKLAND IS DETRIMENTAL TO THE CHILDREN IS AGAINST THE WEIGHT OF THE EVIDENCE.
 V. THE COURT'S HOLDING THAT THE APPELLANT'S TESTIMONY WAS UNTRUE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VI. THE COURT IN HOLDING THAT APPELLANT FAILED TO COMMUNICATE MATTERS OF THEIR CHILD AND TO FOSTER A RELATIONSHIP BETWEEN APPELLEE AND THE CHILDREN IS AGAINST THE WEIGHT OF THE EVIDENCE.
In her first three assignments of error, appellant alleges that the trial court abused its discretion by failing to consider certain evidence in making its decision concerning "custody" and visitation. It is well settled that a trial court is given broad discretion in its allocation of parental rights. Jamieson v. Simmons (June 26, 2000), Highland App. No. 99CA16, unreported, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144. A trial court also has discretion in determining visitation matters. Burik v. Johnson (Feb. 12, 1997), Pike App. No. 96CA570, unreported. Thus, we will not disturb a trial court's custody and visitation determinations unless they involve an abuse of discretion.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.
An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff's Dept. v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 498, 506; Wilmington SteelProducts, Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120,122. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court.In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138. Above all, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony. Jane Doe 1, supra, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Furthermore, deferential review in a child custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate well to the record. Millerv. Miller (1988), 37 Ohio St.3d 71.
In conducting divorce proceedings, a court is required to allocate parental rights and responsibilities for the care of each minor child of the marriage. R.C. 3109.04(A). When doing so, the court must take into account the best interest of the child. R.C. 3109.04(B)(1). The court is directed, by statute, to consider all relevant factors, including, but not limited to those listed in R.C. 3109.04(F)(1).[1] Visitation rights are governed under R.C. 3109.051. R.C. 3109.051(D) sets forth the non-exclusive list of factors that a court shall consider in determining whether the granting of visitation is in the best interest of the child.[2]
Appellant claims that in determining the best interest of the children, the trial court failed to consider appellee's alleged abusive behavior towards her; that it failed to consider who had been Dalton's primary care taker; and that it failed to consider appellee's alleged alcohol abuse. At the outset we find that there is a conflict of evidence on each of these issues.
Appellant's claim that the trial court failed to consider appellee's alleged violence is meritless. Appellant testified that she had been the victim of numerous abusive assaults at the hands of her husband. Specifically, she alleged that appellee had held a gun to her head; that he hit her when she was pregnant with Dalton and that she sought emergency medical care afterward; and on another occasion she was holding her son Dalton when appellant shoved her to the ground. Appellant testified that she was battered so many times by her husband that she could not count them. She said that she had had black eyes, bruises and marks from the attacks.
Appellee admitted hitting his wife during their marriage, and that on one occasion he hit her with a closed fist. However, he denied holding a gun to her head, giving her black eyes, or pushing her to the ground while she was holding Dalton. Appellee indicated that the altercations were more in the nature of mutual shoving and pushing matches, and that at times he would "bear hug" appellant to keep her from swinging at him.
There was witness testimony presented to corroborate both versions of the confrontations between the parties. Thus, the issues presented by this evidence involved the credibility of the abuse allegations, and the effect of the alleged abuse upon the well being of the children. The record indicates that in making its determination, the trial court considered the evidence relating to the allegations of abuse. In its written Opinion, the trial court wrote:
 1. The father has admitted that on at least one occasion he pushed the Mother onto a couch to restrain her. He punched a hole in the wall during an argument. The mother indicates that she was the frequent victim of domestic violence at the hands of the Father. The Mother's credibility is seriously in question as a result of many instances where it appears that her testimony is simply untrue. She has been charged with falsification as a result of baseless police complaints against the Father.
 2. The Mother has admitted to, on at least one occasion, kicking a hole in the wall and throwing objects in the home.
Appellant claims that this case is similar to McLaughlin v. McLaughlin
(June 28, 1989), Washington App. No. 88CA4, unreported, in which we found that a custody award was improper based in part on the court's failure to consider uncontroverted evidence that depicted the parent as "an individual with a violent temper who physically and mentally abused his wife in front of their children finally causing [her] to leave the home and file for divorce." However, this case is easily distinguishable fromMcLaughlin in that the evidence of abuse here is conflicting. Moreover, in considering the conflicting testimony in this case, the trial court determined that at least some of the evidence of abuse was not credible. The trial court is in a unique position to make this determination. It is not an abuse of discretion to credit one party's version of events over another's when there is competent, credible evidence to support the conclusion. Therefore, appellant's first assignment of error is overruled.
In her second assignment of error, appellant claims that the trial court failed to consider who had been Dalton's primary caretaker. Although not an enumerated statutory factor, a party's role as a primary caretaker is nevertheless a relevant factor to be considered in the best interest analysis. See Holm v. Smilowitz (1992), 83 Ohio App.3d 757,776; Thompson v. Thompson (1987), 31 Ohio App.3d 254, 259. However, a trial court should not rely on a determination of the primary caretaker as a substitute for a searching factual analysis of the relative parental capabilities of the parties, and the psychological and physical necessities of the children. Thompson, supra. The primary caregiver doctrine is one factor that the court must consider in determining which parent will be the residential parent, but it is not given presumptive weight over other relevant factors. Thompson, supra; Winters v. Winters
(Feb. 24, 1994), Scioto App. No. 2112, unreported.
The trial court did not address the primary caretaker doctrine in its opinion or judgment entry. That omission, however, is not necessarily an abuse of discretion. Appellant failed to request findings of fact and conclusions of law under Civ.R. 52, which states that a trial court's judgment may be general unless one of the parties requests separate findings of facts and conclusions of law. Moreover, where there is no evidence to the contrary, an appellate court will presume that the trial court considered all the relevant factors as required by R.C.3109.04(F)(1). See, by way of analogy, Evans v. Evans (1995),106 Ohio App.3d 673, 677; see, also, Wood v. Wood (Mar. 30, 2001), Ashtabula App. No. 2000-A-0027, unreported, and Moneypenny v. Moneypenny
(Jan. 17, 2001), Medina App. No. 3051-M, unreported. Thus, we presume that the trial court considered the primary caretaker doctrine in its analysis in the absence of definitive evidence to the contrary, as R.C.3109.04(F)(1) does not require the court to make a specific finding regarding each of the criterion it applied in the best interest analysis.
After reviewing the evidence, we cannot say that the trial court abused its discretion concerning the primary caretaker doctrine. There was conflicting testimony regarding the level of care provided to Dalton by each parent. Both parties worked full-time during the marriage, and on different shifts. Appellant works at Big Lots. Appellee is a deputy sheriff at the county jail and typically works either 2nd or 3rd shift. The record shows that the grandparents were also involved with the care of the children, including weekly babysitting and transportation to medical appointments. Both sets of grandparents would prepare meals to deliver to the parties periodically.
Appellant claims that she was Dalton's primary caretaker, and that appellee left most, if not all, of the parental duties and household chores to her. On the other hand, appellee claims that the parties ate fast food much of the time, and that he did participate in caring for the children by playing with them and bathing them, as well as cooking and cleaning. Furthermore, there was competent, credible evidence presented that appellant frequently cursed at the children, that she smokes around the children (both children have respiratory illnesses), and that she has led a less than stable life after the parties separated. This is not to say that appellant was remiss in her parental duties; the trial court found, and the evidence supports the conclusion, that she is a loving, caring parent to both Dalton and Haley. But, considering the overall evidence presented to the trial court, we do not believe that the primary care doctrine was such a significant factor that it tipped the scale in favor of awarding custody of Dalton to appellant. Thus, we find no abuse of discretion here and overrule the second assignment of error.
In her third assignment of error, appellant claims that the trial court failed to consider appellee's history of alcohol abuse in its best interest of the children determination. We disagree. There was abundant testimony presented concerning the drinking habits of both parties. Alcohol consumption was unquestionably part of their marital routine. The trial court found that both parties consume alcohol, but that neither has a serious drinking problem that impacts on the children. This finding is supported by competent, credible evidence. The trial court is in the best position to determine whether appellant's alcohol consumption adversely affected his work, or the performance of his parental duties. We see no evidence in the record that would cause us to second guess the trial court or conclude that it failed to consider the appellee's use of alcohol. The third assignment of error is overruled.
In the fourth, fifth and sixth assignments of error, appellant challenges the manifest weight of the evidence to support the trial court's findings. A reviewing court will not reverse an award of custody as being against the manifest weight of the evidence if it supported by some competent and credible evidence. Seasons Coal Co., supra, citingC.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
First, the trial court found that appellant is in an ongoing relationship with a male companion, Scott Shankland, and that the relationship is potentially detrimental to the child. The trial court based this finding on competent, credible evidence that Shankland has a felony record, a history of drug abuse, and a history of domestic violence.
Appellant claims that the trial court improperly awarded custody because this finding presumes a future possibility that Shankland's presence may be detrimental to the child, and is not based on present circumstances. Appellant cites us to Seibert v. Seibert (1990),66 Ohio App.3d 342. In Seibert, the trial court awarded custody to the father in a divorce proceeding, relying in part on a recommendation from a clinical psychologist that the mother not be awarded custody because he was not sure that she would be able to provide the stability necessary in a custodial parent. Id. The Twelfth District Court of Appeals reversed the trial court, in part, because the psychologist's recommendation focused on future possibilities rather than present factors. The court held that a custody award should be based on present or pastcircumstances, not future possibilities or contingencies. Id. (emphasis added).
Contrary to appellant's assertion, Shankland's pastbehavior is very much a consideration in a best interest determination. The ultimate ruling in Seibert supports this conclusion. Shankland's presence impacts on the safety, security and development of the children who will be in contact with him. Although there was no evidence that Shankland has abused the children in this case, it does not follow that the trial court was precluded from considering his past history as it relates to his potential to be a stable figure in the children's lives. Just as a parent's past conduct is a relevant consideration, so should a live-in companion's past conduct be a consideration when he will be involved in parenting the children. This assignment of error is overruled.
Next, appellant challenges the trial court's finding that her testimony was untrue. The trial court addressed appellant's credibility in two sections of its opinion. However, as appellant points out, the trial court failed to make specific reference to testimony that it found incredible. As already noted, appellant did not request findings of fact and conclusions of law under Civ.R. 52. "It is well-established that a judgment entry may be general, and where findings of fact and conclusionsof law are not specifically requested by the party, regularity of proceedings at the trial level will be presumed." Smith v. Smith (Mar. 15, 2001), Franklin App. No. 00AP-993, unreported, citing Bunten v.Bunten (1998), 126 Ohio App.3d 442. Thus, we hold that the trial court did not err by making a general finding on the issue of credibility in this case.
In addition, appellant argues that the evidence does not support the trial court's credibility determination, but we disagree. For instance, appellant testified that appellee forced her to consume alcohol.
However, appellant's testimony was effectively impeached by several witnesses who observed her drinking after the parties had separated.
Appellant's testimony that she did not smoke around the children was also effectively impeached. In addition, appellant made allegations that appellee tried to drown Dalton in the bathtub when he was an infant, he never spent much time with the children until after the divorce, and he forced her to assume a certain persona in social situations under threat of deadly force. Considering the overall evidence, the trial court reasonably could have found these allegation to be at least embellished, if not untrue.
Finally, appellant claims that the trial court erred in finding that she had failed to communicate matters of their children to appellee, and to foster a relationship between appellee and the children. Appellant admits that there is conflicting testimony on this issue, but argues that the court arbitrarily credited appellee's testimony on the subject over hers. Again, our role is to determine if there is competent, credible evidence to support the court's finding. If a finding of the trial court is erroneous under this analysis, it must be because there is no evidence to support it. We cannot substitute our judgment on credibility for that of the trial court where the evidence is sufficiently contested.
In this case, there was competent, credible evidence that Haley's demeanor towards appellee changed abruptly during the course of the divorce proceeding. In addressing this evidence, the court wrote that "[this] Court has seldom seem such a drastic change in a child from apparently happy and normal to palpably unhappy and tense, unless someone in the position of the Mother is creating, consciously or unconsciously, a situation where the child believes she would be disloyal to that parent unless she rejects others who have been close family members for a substantial period." The trial court was entitled to believe that the evidence showed that appellant expresses extreme animosity towards appellee. The parties avoided face to face contact after separating, and appellant had at least one verbal encounter with appellee's father who was transporting the children for visitation. The contentiousness between the parties supports the trial court's conclusion about appellant's possible influence over Haley. Further, the record shows that appellant does not return appellee's, or his father's, telephone calls, and that she has been unable in some instances to rationally discuss issues regarding the children. Appellant's sixth assignment of error is overruled.
Accordingly, we find that there is some competent and credible evidence to support the trial court's judgment. The trial court did not abuse its discretion in allocating parental rights and responsibilities in this case, or in awarding visitation rights. Its findings are not against the manifest weight of the evidence. The judgment of the trial court is affirmed.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Domestic Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
 _______________________ William H. Harsha, Judge
[1] In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
[2] (D) In determining whether to grant companionship or visitation rights to a parent, grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific visitation schedule, and in determining other visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
 (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 (2) The geographical location of the residence of each parent and the distance between those residences, and if the person who requested companionship or visitation is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
(5) The child's adjustment to home, school, and community;
 (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested the companionship or visitation, as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
 (8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
 (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights, and if the person who requested companionship or visitation is not a parent, the willingness of that person to reschedule missed visitation;
 (11) In relation to visitation by a parent, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to visitation in accordance with an order of the court;
 (14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 (15) Any other factor in the best interest of the child.