OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and Appellant's brief. Appellant Terry Melott appeals the decision of the Municipal Court, Southwest Division, Columbiana County, Ohio finding him guilty of one count of improper handling of a firearm in a motor vehicle, a misdemeanor of the fourth degree, in violation of R.C.2923.16. Melott claims that the State failed to prove that the firearm found in his truck was not in plain sight as required by the statute. Because the State put on sufficient evidence that the gun was not in plain sight, we affirm the decision of the trial court.
 Facts {¶ 2} On January 14, 2004, Deputy Steven Boyd and Sergeant Thomas Smith were on duty with the Columbiana County Sheriff's Office when they were called by dispatch to respond to a poaching complaint sometime around 1:00 A.M. The officers were given a description of a dark Ford truck and were told that it had a broken taillight. The occupants had allegedly been witnessed spotlighting and shooting at deer from the truck.
 {¶ 3} The officers reported to the area where the alleged poaching had occurred and came across a vehicle fitting the description. The officers initiated a traffic stop and approached the vehicle. They found two men in the car with a rifle stuck in between the seats and several spent rounds on the floor. The officers ordered the men out of the vehicle. Melott was placed under arrest. He was arraigned later that morning at which time he pled not guilty.
 {¶ 4} On March 31, 2004, the trial court conducted a bench trial and found Melott guilty of improper handling of a firearm inside a vehicle, and imposed a fine of fifty dollars.
 Firearm in Plain Sight {¶ 5} As his first of two assignments of error, Melott argues:
 {¶ 6} "Terry Melott's conviction should be reversed because it is not supported by the evidence."
 {¶ 7} Whether or not the State presented sufficient evidence is a question of law dealing with adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. The appellate court views the evidence in the light most favorable to the State and determines whether any rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123,138, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 8} Melott was convicted of the improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16. The relevant portion of that statute reads as follows:
 {¶ 9} "(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless it is unloaded and is carried in one of the following ways:
 {¶ 10} "(1) In a closed package, box, or case;
 {¶ 11} "(2) In a compartment that can be reached only by leaving the vehicle;
 {¶ 12} "(3) In plain sight and secured in a rack or holder made for the purpose;
 {¶ 13} "(4) In plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight. * * *"
 {¶ 14} Melott explains that it is not disputed that the firearm in his vehicle was unloaded with the action open. Therefore, the only remaining issue in this case, according to Melott, is whether the firearm was in plain sight. More specifically, we must decide whether a firearm can be partially concealed and still be in plain sight for the purposes of the statute.
 {¶ 15} Melott argues, pursuant to our holding in State v. Crock
(1998), 126 Ohio App.3d 439, 442, that if a police officer can stand outside the defendant's automobile, look through the windows, and see the gun in question, then it is in "plain view."
 {¶ 16} In that case, the State did not elicit testimony that an officer at the scene attempted to look into appellant's car to ascertain whether the weapon was in "plain view". Accordingly, this court opined that "it cannot be said that a police officer's failure to look would render an object to be out of `plain view.'" Id. at 442. This court then concluded that the State failed to produce evidence to prove each element of the offense charged beyond a reasonable doubt, and then, notably, limited its decision to the specific facts of that case.
 {¶ 17} In Crock, the State was silent as to evidence regarding plain sight. In the present case, there is a good deal of testimony regarding the location of the firearm. Because this court limited its decision inCrock to the specific facts in that case and the facts in this case vary greatly from those in Crock, we find that the holding in that case is inapplicable here.
 {¶ 18} Although the caselaw generally deals with convictions for carrying a concealed weapon in violation of R.C. 2923.12 rather than improper handling of a firearm, persons charged with each of those crimes can assert the affirmative defense found in R.C. 2923.16 (C) that the weapon was unloaded, with the action open, and in plain sight. Accordingly, we find the analysis to be applicable to this case.
 {¶ 19} It has repeatedly been held that a weapon need not be completely invisible to be concealed for purposes of R.C. 2923.12. Statev. Almalik (1987), 41 Ohio App.3d 101; State v. Coker (1984),15 Ohio App.3d 97; State v. Pettit (1969), 20 Ohio App.2d 170. Indeed, a partially concealed weapon constitutes a "concealed" weapon within the meaning of R.C. 2923.12. Almalik; Coker; Pettit. The test for determining whether a weapon, including a "partially concealed" weapon, is concealed for purposes of R.C. 2923.12 is stated in Coker:
 {¶ 20} "It is not necessary to prove that the shotgun was carried in such manner or in such location as to give absolutely no notice of its presence under any kind of observation. Rather, it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. This is a question of fact to be resolved by the trier of fact. There must be an evidentiary basis established by the proof upon which the jury could find that the weapon was concealed. * * *" Id. at 98.
 {¶ 21} Essentially, a review of the caselaw reveals that if the presence of a firearm is not readily apparent to anyone walking up and looking into a vehicle, then it may be considered a concealed weapon. Most of the confusion arises from situations where a weapon comes into "plain view" after something or someone in the vehicle is moved, but wasn't in "plain sight" when the officer first approached the vehicle.
 {¶ 22} For example, in Coker, the facts presented at trial revealed that the arresting officer observed a sawed-off shotgun only after the defendant exited the vehicle, although the butt of the gun was plainly visible.
 {¶ 23} Likewise, in State v. Davis (1984), 15 Ohio App.3d 64, the trial court refused to give instructions to the jury regarding the affirmative defense described in R.C. 2923.16(C)(4) when the defendant was charged with carrying a concealed weapon. The court reasoned that a shotgun was not in "plain sight" when it was placed under the seat and could only be seen by a person standing "inside the door" when the door was open. Although the action was open, and the weapon was unloaded, the First District found that the trial court did not err in refusing to give the jury the instruction on the affirmative defense.
 {¶ 24} Similarly, in State v. Suber (1997), 118 Ohio App.3d 771, the Tenth District was asked to decide whether a weapon could be partially hidden yet still concealed pursuant to R.C. 2923.12 (A)(1). The Suber
court explained that in order to find a defendant guilty of carrying a concealed weapon, the jury must find that the weapon is "out of sight or so hidden that it cannot be seen by ordinary observation by others near enough to see it." In Suber, two officers testified that during a traffic stop, they observed what they believed to be a rifle underneath the front seat of the defendant's vehicle but only after the driver had exited the vehicle. The testimony further demonstrated that approximately one-third of the rifle was visible through the back passenger window on the driver's side. The court concluded that the weapon was concealed reasoning:
 {¶ 25} "Although the weapon was not in a position to be detected by ordinary observation (i.e., if the police officers had stopped the car and appellant had remained in the car and had the officers approached the vehicle and spoken to appellant through the driver's side window), the weapon was in plain view when the officers looked through the windows in a nonordinary fashion. Based upon the description given to the police, the police had reason to believe that there was a weapon in appellant's car. Without opening the doors to the car, the police officers were able to see a weapon that would not have been immediately apparent to them had they looked into the car only through the front windows of either the driver or the passenger sides." Id. at 779.
 {¶ 26} In this case, Deputy Boyd took the stand and testified that he and Sergeant Smith both approached the vehicle. Deputy Boyd asked both the passenger and driver for identification but both responded that they didn't have any. Sergeant Smith told Deputy Boyd that he saw a gun stuck in between the seats of the vehicle. Deputy Boyd more specifically testified that Sergeant Smith had gone around the front of the vehicle and was looking through the front windshield. The officers then ordered both men out of the vehicle.
 {¶ 27} Deputy Boyd testified that "the butt of the gun was down towards the floor, in between the seats, and the stock of the gun was pushed in between the seats, with the barrel toward the upper part of the seat, in between them. He further explained, "And then being a Ford Ranger it was concealed where we couldn't even see it because of the vehicle." "With the butt of it, like I stated, in between the seats, with the size of your client and the size of the other man leaning against it, it was very much concealed."
 {¶ 28} When asked whether the barrel of the gun which was pointing up was what drew his attention to the gun, Deputy Boyd testified:
 {¶ 29} "What? I did — I did not see the gun when I approached the vehicle. Knowing it was a gun call I approached the vehicle cautiously. Sergeant Smith come [sic] from the front. He's the first one that seen the vehicle, and that's when he ordered your client out of the vehicle, because he observed it, you know, the barrel of it, I believe. You'll have to ask him. —"
 {¶ 30} When asked by the court, again, whether he saw the gun in the vehicle, Deputy Boyd responded, "When I first approached the vehicle I did not see it, Your Honor." The court then asked when he first saw the gun, to which Deputy Boyd replied:
 {¶ 31} "Sergeant Smith made a comment, `A gun.' Because he was approaching from the front of the vehicle, walking towards the driver's seat. I was behind the driver, looking — you know, with my spotlight and my take down lights on though, watching their hands. I asked them for identification, and that's when Sergeant Smith observed the gun in between the seats. One of them must have moved the barrel, he must have moved the barrel, he must have noticed. And he said, `Gun.' * * *"
 {¶ 32} The court then asked Deputy Boyd whether he was able to see the gun as it was situated in the vehicle, to which he responded, "Not until the driver got out. I did not see it. I couldn't see it. It was between them, I mean they were shoulder to shoulder in the vehicle."
 {¶ 33} When asked on redirect whether he would have known there was a gun in the car if Sergeant Smith had not approached the vehicle from the front as he stood next to them waiting for identification, he again responded in the negative.
 {¶ 34} Next, Sergeant Smith took the stand and testified that when he first approached the vehicle, "I don't believe that Deputy Boyd first viewed or saw the gun inside the vehicle." Sergeant Smith then testified that even with Melott still in the vehicle that he could still see fifty percent of the gun. He explained, however, that he was within 12 inches of the door before he was able to ascertain that what he was seeing was the barrel of a gun.
 {¶ 35} After this testimony, the State rested. Richard Faloba, the passenger in Melott's vehicle, took the stand next to testify on Melott's behalf. He explained that the firearm was his and that it was in "plain sight" with the barrel pointed towards the floorboards.
 {¶ 36} Melott argues that because Sergeant Smith could see fifty percent of the gun when he was within twelve inches of the vehicle, the firearm was clearly in plain sight. However, if both officers weren't alerted to the presence of the firearm, the apparent goal of the statute to ensure officer safety was not met.
 {¶ 37} Viewing the testimony of these two witnesses in a light most favorable to the State, a reasonable trier of fact could conclude that the firearm was not in plain sight since Deputy Boyd would not have seen the weapon if Sergeant Smith did not first alert him of its presence. Accordingly, the evidence presented by the State was sufficient to sustain appellant's conviction of improper handling of a firearm in a vehicle.
 Conviction for Offense Not Charged {¶ 38} As his second and final assignment of error, Melott claims:
 {¶ 39} "Terry Melott's conviction should be reversed because it is based upon the trial court's belief that the defendant committed an offense for which he was not charged."
 {¶ 40} Essentially, Melott argues that he was convicted for the firearm charge solely because the trial court believed he was poaching but could not convict him of that charge since it was not contained in the indictment. In his brief, Melott does not provide any legal basis for why his conviction should be reversed. In the record however, after finding Melott guilty of the firearm charge, the trial court states:
 {¶ 41} "You know, it sounds like you guys were poaching, but you're not charged with that. And no one has presented any evidence that you were. If you were, or if you were improperly firing that gun from the vehicle, which you probably were, then the penalty would be more severe. I think that this gun was not in plain sight, based on what I've heard; but that's all I got, I mean, that's all anyone has told me. Is that you were carrying a gun that was not in plain sight."
 {¶ 42} It appears from this statement that the trial court suspected the two men were engaged in some other form of criminal conduct the night of Melott's arrest. This is understandable considering the facts leading up to the arrest. However, "in a bench trial, the trial court is presumed to rely on only relevant, material evidence in arriving at its judgment."State v. Lane (1995), 108 Ohio App.3d 477, 484, citing, State v.Richey (1992), 64 Ohio St.3d 353, 357.
 {¶ 43} Because a review of the record indicates that there was sufficient evidence to support Melott's conviction, this assigned error would be harmless at best as Melott was not prejudiced by the trial court's apparent belief that he had been poaching. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.