ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Artez Gainer, appeals his conviction for carrying a concealed weapon in violation of R.C.2923.12. The facts leading to this appeal show that on January 27, 2002, Cleveland police officers, Ereg and Wolf, responded to the area of East Boulevard in Cleveland, Ohio. The officers received a radio assignment about a female brandishing a gun in the area of East 108th and East Boulevard. Once at East Boulevard, the officers received another call telling them the female had left the area in a red and black Camaro. Within minutes of this second call, the officers saw a vehicle matching the one described over the radio and traveling at or near the intersection of East 112th and Orville. Ereg testified that when they first observed the car neither he nor his partner could tell whether the driver was male or female.
 {¶ 2} After pulling the vehicle over, Ereg approached defendant who was driving and the only person in the car. When Ereg asked whether there was a gun in the car, defendant responded "no." Ereg asked to look in the car anyway, and defendant answered "yes." After defendant moved to the back of the police cruiser, Ereg returned to the vehicle. Through the driver's side window, he saw a handgun with approximately an inch of its white handle and "a little bit of the rear" protruding out from under the vehicle's seat. Tr. 17-18. They seized the vehicle and the gun, an operable and loaded .25-automatic.[1]
During a subsequent inventory search of the vehicle, police found defendant's jacket containing thirteen .25-automatic rounds, which matched the weapon found in the car.[2] Following a bench trial, defendant was convicted of carrying a concealed weapon. Defendant appeals his conviction and assigns the following errors.
"I. The trial court erred by not granting the motion to suppress."
 {¶ 3} Defendant argues the trial court erred in denying his motion
 {¶ 4} to suppress the gun found in his car. According to him, the gun was not in Officer Ereg's plain view and could not, therefore, be confiscated and used as evidence to convict him.[3]
 {¶ 5} In State v. Duncan (Aug. 15, 2002), Cuyahoga No. 80286, 2002-Ohio-4191, this court recently stated: "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id. at ¶ 17, citing State v. Fellows (May 22, 1997), Cuyahoga App. No. 70900.
 {¶ 6} As stated by the Ohio Supreme Court in State v. AkronAirport Post 8975 (1985), 19 Ohio St.3d 49, 482 N.E.2d 606, at syllabus, "Where there is no search warrant, the burden falls on the state to show that a search comes within one of the judicially recognized exceptions: (a) A search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine."
 {¶ 7} In the case at bar, both parties agree the plain view doctrine is the exception that may apply here. Ereg testified that only part of the gun's handle and its back-end were in plain view. Defendant argues that because Ereg said he saw parts of the gun under the car's seat, it was clearly visible and in plain view. Therefore, defendant argues, the gun cannot be considered "concealed" under R.C. 2923.12 if it was in plain view. We disagree. This court has previously held that a partially concealed weapon is still considered "concealed" within the meaning of R.C. 2923.12. State v. Almalik (1987),41 Ohio App.3d 101, 105, 534 N.E.2d 898. Moreover, "a single gun can be both `in plain view' for purposes of search and seizure, and "concealed" for purposes of sustaining a conviction for carrying a concealed weapon.
 {¶ 8} "Under the plain-view doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the discovery of the item was lawful and it was immediately apparent that the item was incriminating. State v. Waddy (1992),63 Ohio St.3d 424, 442, 588 N.E.2d 819." State v. Suber (1997),118 Ohio App.3d 771, 776, 694 N.E.2d 98; See State v. Young (May 7, 1987), Cuyahoga App. No. 51984.
 {¶ 9} In this case, police responded to a radio call about a woman with a gun who got into a red and black Camaro with another person in the area of East Boulevard. Within minutes of receiving this information, police saw defendant's red and black Camaro in the same vicinity described over the radio. Ereg testified that when they observed defendant's car, they could not discern whether the driver was male or female. As a result of the information given to police regarding a woman brandishing a gun, the police had reason to believe there might be a gun in defendant's vehicle. Because of these circumstances, we conclude the police made a lawful stop.
 {¶ 10} After he pulled to the side of the road, defendant voluntarily permitted police to search his vehicle. Once defendant was out of the car, only then did the gun come into plain view. While defendant sat in the car, his body obstructed a view of the seat area and the gun "was not in a position to be observed by ordinary observation * * *." Suber, supra, at 779. Once he was out of the car, however, the gun was in plain view when Ereg looked through the side window and saw part of it under the seat.
 {¶ 11} As a matter of law, the gun in this case fits within the plain view exception to warrantless searches, and its seizure is justified. On the record before us, there is competent, credible evidence supporting the trial court's decision to deny defendant's motion to suppress. Defendant's first assignment of error is not well taken.
"II. The evidence was insufficient as a matter of law and/or the verdict is against the manifest weight of the evidence."
 {¶ 12} In this assignment, defendant reiterates part of the argument he presented in his first assignment of error. He argues the evidence is legally insufficient because a weapon cannot be "in plain view" and concealed at the same time. Because we have already addressed this issue in the first assignment of error, we do not visit it again here.
 {¶ 13} Next, defendant contends the state did not prove that the gun was operable. According to defendant, because police used laboratory bullets instead of the ammunition found in the gun and in his pocket, the gun cannot be deemed operable under the law. We disagree.
 {¶ 14} When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 15} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 545-546. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony." Id, citingTibbs v. Florida (1982) 457 U.S. 31, at 42. In a challenge to the manifest weight of the evidence, a court reviews the record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflict in the evidence, the jury clearly lost its way * * *."Thompkins, 387.
 {¶ 16} Whether the loaded firearm found in defendant's car was operable is determined by R.C. 2923.11. The statute defines a "firearm" as:
"Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can be readily rendered operable."
 {¶ 17} See State v. Axson, (May 1, 2003), Cuyahoga App. No. 81231. In the case at bar, it is irrelevant that police bullets were used to assess the gun's operability rather than the ammunition found in defendant's jacket pocket. Officer Ereg testified the gun found in defendant's car fired a round of ammunition during police testing. Police testing proved the firearm was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Under the statute, defendant's gun was operable.
 {¶ 18} After viewing the evidence in a light most favorable to the prosecution and weighing that evidence and all reasonable inferences and considering the credibility of the witnesses, we conclude that the evidence was sufficient and defendant's conviction was not against the manifest weight of the evidence. Accordingly, we overrule defendant's second assignment of error.
"III. The trial court erred by not dismissing the indictment as a violation of the ohio and federal constitution."
 {¶ 19} In this last assignment of error, defendant argues that the indictment against him for carrying a concealed weapon under R.C. 2913.12 should have been dismissed because the statute is unconstitutional.
 {¶ 20} The statute provides in relevant part: "no person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." R.C. 2923.12(A). After appellant challenged the constitutionally of this statute, the Ohio Supreme Court held that the statute is constitutional. Klein v. Leis,99 Ohio St.3d 537, 2003-Ohio-4779. Specifically, the Court held that "there is no constitutional right to bear concealed weapons." Id., at paragraph one of the syllabus. Accordingly, defendant's third assignment of error is overruled.
Judgment accordingly.
McMONAGLE, P.J., and James J. Sweeney, J., Concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Ereg testified he unloaded the gun at the scene. Tr. 18.
[2] Police later learned that defendant's vehicle, though similar, was not the one described in the second radio call.
[3] Defendant also makes one reference to the possibility that the officers lacked reasonable suspicion to initially stop his car. However, beyond this one generalized reference, defendant does not elaborate upon or factually support this contention anywhere else in this appeal. As such, we do not address this claim beyond noting that the officers did have sufficient reason for the initial stop because the radio call had identified a vehicle matching defendant's red and black Camaro which is the car "that matched the description of the vehicle that might have the gun in it." Tr. 15.