[Cite as *State v. Ajumu*, 2011-Ohio-2520.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95285

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BAKARI AJUMU

DEFENDANT-APPELLANT

JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-529858

BEFORE:   Stewart, P.J., Sweeney, J., and Jones, J.

RELEASED AND JOURNALIZED:   May 26, 2011

ATTORNEY FOR APPELLANT

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, OH   44113

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY:   Pinkey S. Carr
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH   44113

MELODY J. STEWART, P.J.:

{¶ 1}   Defendant-appellant, Bakari Ajumu, appeals from his conviction for murder, a lesser-included offense of the original charge of aggravated murder.   He complains that the court erred by refusing to allow him to offer certain evidence to show that he acted in self-defense, that the state

improperly commented on his criminal record and post-arrest silence, and that his conviction is against the manifest weight of the evidence.

{¶ 2} The state's evidence showed that the victim formerly dated Ajumu's current girlfriend, and that the victim remained friendly with her. The day before his death, the victim had been arrested on drug charges and his vehicle was impounded. He called the girlfriend at her place of employment and asked her to give him the money he needed to retrieve the vehicle. She refused. The victim called back and told the girlfriend that unless she lent him the money he would break the windows of her house, broadly hinting that it would be less expensive for her to lend him the money than suffer the cost of repairing her windows. The girlfriend then spoke with Ajumu and told him that the victim was mad at her and coming to her house. Ajumu arrived at the girlfriend's house before either the girlfriend or the victim. The girlfriend's goddaughter was home and heard Ajumu say that if the victim came over, he would kill him. The girlfriend arrived home from work and received a call from the victim. She told him not to come over. She hung up but saw Ajumu pick up her phone and dial the number from the call she just received. The girlfriend left the room and did not hear Ajumu's conversation. When she returned to the room, Ajumu was no longer using the telephone. The girlfriend went downstairs and told the goddaughter to call the police because she thought Ajumu and the victim were "about to start

acting crazy." The victim's daughter, who was staying with the girlfriend, saw Ajumu holding a knife. Ajumu went outside and confronted the victim who had since arrived at the house. The two men pushed each other. Ajumu pulled a knife and stabbed the victim in his right arm. The wound was so deep that the victim eventually bled to death.

{¶ 3} Ajumu testified that he acted in self-defense. He said that at the start of the confrontation, the victim lifted his shirt to show a gun in the waistband of his pants. After the reciprocal shoving commenced, the victim started to reach for the gun, prompting Ajumu to react by stabbing the victim. Ajumu conceded that after he learned that the victim had died from the stabbing, he fled to Nevada for two months under an alias, ostensibly to raise money to mount a criminal defense. He was arrested upon his return to Ohio.

I

{¶ 4} In his first assignment of error, Ajumu complains that the court abused its discretion by playing for the jury, but refusing to allow into evidence, a videotape depicting the victim briefly assaulting the girlfriend at her place of employment. The court refused to allow the video into evidence on grounds that it was "needless" in light of the girlfriend having testified to the matters shown on the video and because the video was only available on the state's laptop computer, which could lead to certain technical issues.

{¶ 5} R.C. 2945.35 states in part: "No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement." The court has broad discretion to admit an exhibit into evidence. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 434, paragraph two of the syllabus. The court does not abuse its discretion by refusing to admit an exhibit on grounds that it is cumulative. See *Cleveland v. Hill* (1989), 63 Ohio App.3d 194, 199, 578 N.E.2d 509.

{¶ 6} The video in question was marked as an exhibit and made the subject of questioning for both the girlfriend and the victim's mother. Ajumu first mentioned the video during the mother's testimony when she testified that she had never seen her son hit another woman. Defense counsel asked the mother whether she was aware of an incident occurring seven months earlier at the girlfriend's place of employment, captured by a security camera, which showed the victim placing his hands around the girlfriend's neck and momentarily holding her against a wall. This conduct apparently led to the victim's arrest, and the mother conceded that she viewed the video at the time legal proceedings were pending for the incident. The mother disputed whether the video showed the victim putting has hands on the girlfriend's neck, so the court gave defense counsel permission to play the video for the jury. The mother became distraught at the thought of seeing her deceased son on the video, so defense counsel voluntarily refrained from playing the

video. In remarks later made on the record, the court stated that it would accept by inference the authenticity of the video, but in light of the state's objections on relevancy grounds, withheld ruling on its admissibility. Defense counsel stated his understanding that the court would allow the defense to play the video for the jury at a later point in the trial.

{¶ 7} During cross-examination of the girlfriend, defense counsel asked her about the incident occurring at her place of employment. The girlfriend said that she recalled it and that she mentioned it to the police at the time of the victim's death. At that point, the court allowed Ajumu to play the video for the jury over the state's objection. The girlfriend then narrated events as they unfolded on the video. She said that although the victim had been arrested because of the incident, she did not press charges against him. This led to a temporary protection order being entered against the victim, although the girlfriend claimed to have been unaware of that order at the time of the stabbing.

{¶ 8} At the close of all evidence, Ajumu asked that the video be admitted into evidence. The state again objected on grounds that the video was cumulative in light of the girlfriend's testimony admitting that the incident occurred and that it was irrelevant because of her decision not to press charges against the victim. The court excluded the video, stating that it was cumulative because the jury had previously viewed it and that it

wished to avoid any "technical issues" that might arise in the jury room because the video had been played on the state's laptop computer.

{¶ 9} We find no abuse of discretion in the court's refusal to admit the video on grounds that it was cumulative. "Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." *United States v. Williams* (C.A.7, 1996), 81 F.3d 1434, 1443. The jury saw the video during the trial and listened as the girlfriend gave a lengthy narration of the events depicted in the video. Repeated playing of the video in the jury room would have added nothing to the probative force of Ajumu's claim, particularly since the incident lasted for mere seconds.

{¶ 10} Ajumu now argues for the first time on appeal that the video was relevant to his theory of self-defense because it showed his state of mind and explained his actions in defending himself.

{¶ 11} Having raised self-defense, Ajumu was entitled to testify about "his knowledge of specific instances of the victim's prior conduct" in order to establish his state of mind at the time of the incident. *State v. Baker* (1993), 88 Ohio App.3d 204, 208, 623 N.E.2d 672. He did not, however, testify that

he personally viewed the video prior to the stabbing incident — he could only say that he had conversations with the girlfriend regarding the incident shown on the video and that he was aware of two other incidents in which the victim "pulled a gun on her." The video itself was therefore beyond Ajumu's knowledge. The court allowed Ajumu to testify to what he heard from the girlfriend, so Ajumu had an adequate opportunity to establish his frame of mind without the need for the video to be admitted as an exhibit.

## II

{¶ 12} Ajumu next complains that the state committed misconduct by eliciting testimony about his prior incarceration as well as implying that his failure to immediately claim that he acted in self-defense constituted a comment on his post-arrest right to remain silent.

## A

{¶ 13} During the girlfriend's direct testimony, she was asked by the assistant prosecuting attorney what, if anything, she knew about Ajumu's background. She replied, "nothing really." The state then asked "[d]id you have any information that he spent time in prison?" The court sustained Ajumu's objection to that question. The state repeated the question during its direct examination of a police detective, asking the detective did he, during the course of his investigation, "make a determination as to whether or not [Ajumu] had a criminal history?" Ajumu did not object to this question.

{¶ 14} Evidence of prior convictions fall within the Evid.R. 404(B) prohibition of using other acts to prove criminal conduct because they are ultimately irrelevant to the crime charged. *State v. Cotton* (1996), 113 Ohio App.3d 125, 131, 680 N.E.2d 657. Evid.R. 609(A)(2) allows a party to impeach the accused with evidence of a prior conviction, but only if the accused chooses to testify.

{¶ 15} The questions posed to the girlfriend and the detective about Ajumu's "criminal history" explicitly sought to elicit that which is forbidden by Evid.R. 404(B) — information about Ajumu's prior conviction. The state does not seriously dispute that this constituted prosecutorial misconduct, at least as it relates to the girlfriend, and we see no justifiable basis otherwise for the question. Instead, the state falls back on the proposition that there is no such thing as a perfect trial and that any error in the questioning was harmless beyond a reasonable doubt.

{¶ 16} "Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 357 N.E.2d 1035, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

{¶ 17} We have serious reservations with applying the harmless error rule in a case like this where the state uses it to immunize blatant

misconduct. Nevertheless, the harmless error rule applies. See *State v. DePew* (1988), 38 Ohio St.3d 275, 287-288, 528 N.E.2d 542. Ajumu made it clear in his opening statement to the jury that he would be defending the charges on a theory of self-defense. Ohio uses a subjective test to determine whether a defendant acted in self-defense, so the defendant has the burden of proving his state of mind; that is, that he had a bona fide belief that he was in imminent danger of death or great bodily injury. *State v. Robbins* (1979), 58 Ohio St.2d 74, 80, 388 N.E.2d 755; *State v. Scott*, 8th Dist. No. 90671, 2008-Ohio-6847, at ¶32.

{¶ 18} None of the trial witnesses gave any testimony to show that Ajumu acted with the bona fide belief that he was in imminent danger of death or great bodily harm. No one saw the victim with a gun, saw him raise his shirt indicating that he had a gun, or saw him motion as if to draw a weapon; no one, that is, except Ajumu. Additionally, no one testified that Ajumu said anything about a gun or that his actions were taken to protect himself or others. In fact, not only did Ajumu fail to tell any other witness that he acted in self-defense, he was heard shortly before the stabbing to say that he would kill the victim if the victim came over to the house. The evidence presented by the state thus strongly rebutted Ajumu's theory of self-defense. It was incumbent upon Ajumu to carry his burden of proving

the defense by testifying to his subjective state of mind at the time of the stabbing.

{¶ 19} If it was inevitable that Ajumu would testify in order to carry his burden of proving self-defense, the state surely would have impeached him with evidence of his prior conviction under Evid.R. 609(A). Indeed, defense counsel asked Ajumu about his prior conviction on direct examination as a means of blunting the state's impeachment.

{¶ 20} Nevertheless, we are troubled by the state's eliciting testimony of Ajumu's criminal history *before* he took the stand because the questions did not result from innocent conduct. Every prosecuting attorney knows, or should know, that impeachment with evidence of a defendant's prior convictions can only be done if the defendant testifies. A single violation of this rule from an experienced prosecuting attorney is difficult to comprehend; a second violation of the rule in the same trial is unthinkable to the point that the conduct must be intentional. We condemn in the strongest terms possible the assistant prosecuting attorney's actions with the reminder that "[p]rosecutors have a special duty to seek justice, not merely to convict," *Connick v. Thompson* (2011), ___ U.S.___, and that a violator of this duty can be subject to disciplinary action. *State v. DePew* (1988), 38 Ohio St.3d 275, 288-289, 528 N.E.2d 542. Yet at the same time, we are constrained to find that any information elicited from the state's improper questioning about

Ajumu's prior criminal history was thus truly harmless given the certainty that his criminal history would come out during his testimony.

B

{¶ 21} Ajumu next complains that the state improperly commented on the exercise of his post-arrest right to remain silent. During Ajumu's cross-examination, the state challenged him on his claim of self-defense by eliciting the admission that Ajumu "walked away" after the stabbing and his concession that no other witness saw the gun that he claimed to have seen in the waistband of the victim's pants. The state then asked, "[y]ou were so justified in [stabbing the victim] you didn't even tell anyone, right?" The court overruled an objection and, before Ajumu could answer, the state asked: "Sir, yes or no: Did you tell anyone besides us here in court?" Ajumu replied "no."

{¶ 22} Among the post-arrest rights that attach to a defendant is the right to remain silent. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Under *Miranda*, the state may not use at trial "the fact that [the defendant] stood mute or claimed his privilege in the face of accusation." Id. at 468, fn. 37. The Supreme Court has held further that the prosecution may not use a defendant's post-arrest silence to impeach an exculpatory story told at trial. See *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. This is because implicit in the *Miranda* warnings

is an assurance that silence carries no penalty, and, due to the warnings, every post-arrest silence is insolubly ambiguous. *Doyle*, 426 U.S. at 617.

{¶ 23} *Doyle* has no application to this case, however, because the state's question, viewed in context, did not refer to a time period after Ajumu's arrest. Three days after the stabbing Ajumu went to the girlfriend's place of employment. She urged him to turn himself into the police, but he said he would "when he was ready." He did not claim to her that he acted in self-defense. He then fled to Nevada, without having spoken to the police and without having been given his *Miranda* rights.

{¶ 24} We find these circumstances justified the state's questioning without violating the principles set forth in *Doyle*. The state's question, viewed in the context of the testimony, referenced Ajumu's conversations with the girlfriend just days after the stabbing and his state of mind during the time of the stabbing — that is, if he had been in such fear of imminent death or great bodily harm from the victim, why didn't he communicate that fact to the girlfriend. He had not been in police custody at this point (he was preparing to flee to Nevada), so he had not been given any assurances that his statements could not be used against him. It follows that no constitutional guarantees for the right to remain silent attached and none

were violated.  The state could validly impeach Ajumu on this basis.[1]  See

*Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86;

*Fletcher v. Weir* (1982), 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490.

III

{¶ 25} Finally, Ajumu argues that his conviction is against the manifest

weight of the evidence because the jury lost its way by rejecting his claim of

self-defense.

{¶ 26} The manifest weight of the evidence standard of review requires

us to review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses and determine whether, in

resolving conflicts in the evidence, the trier of fact clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.  *State v. Otten* (1986), 33 Ohio App.3d 339,

340, 515 N.E.2d 1009.   The use of the word "manifest" means that the trier of

fact's decision must be plainly or obviously contrary to all of the evidence.

This is a difficult burden for an appellant to overcome because the resolution

of factual issues resides with the trier of fact.  *State v. DeHass* (1967), 10

Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.  The trier of

fact has the authority to "believe or disbelieve any witness or accept part of

---

[1] For the same reasons, we find no merit to Ajumu's third assignment of error claiming that the court erred by denying his motion for mistrial based on an alleged *Doyle* violation.

what a witness says and reject the rest." *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.

{¶ 27} There were two major conflicts in the evidence: whether Ajumu told the goddaughter that he would kill the victim if he came over to the house and whether the victim carried a gun in the waistband of his pants.

{¶ 28} The jury could rationally conclude that Ajumu told the goddaughter that he would kill the victim if he came to the house. Shortly after receiving the victim's telephone call at her house, the girlfriend testified that she told the goddaughter to call the police because Ajumu and the victim were "about to start acting crazy." She knew that Ajumu and the victim "had this thing where they think they have to protect women," implying that the two men might start fighting. Ajumu himself claimed to be aware of the victim's violent history with the girlfriend, so it was conceivable that the jury believed Ajumu would respond to the victim's visit by threatening to kill him.

{¶ 29} We also conclude that the jury could rationally have found that the victim was not carrying a gun. Apart from Ajumu's testimony, no one else saw a gun on the victim, nor did anyone else see him lift his shirt to display a gun. Ajumu's credibility on the matter suffered given his failure to mention to the girlfriend that he acted in self-defense — a claim that would appear to be immediately obvious from the circumstances that he claimed existed. His credibility likewise suffered when he fled the state to avoid

being arrested. "Flight from justice * * * may be indicative of a consciousness of guilt." *State v. Taylor* (1997), 78 Ohio St.3d 15, 27, 676 N.E.2d 82. The jury could have rationally found that Ajumu's immediate failure to claim self-defense and his two-month evasion of the police showed a consciousness of guilty that belied his claim of self-defense.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
LARRY A. JONES, J., CONCUR