[Cite as *State v. Massingill*, 2021-Ohio-2674.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                             :

    Plaintiff-Appellee,              :

    v.                                        :

JAMILLE MASSINGILL,                  :

    Defendant-Appellant.          :

No. 109818

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** August 5, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-644244-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

LARRY A. JONES, SR., J.:

**{¶ 1}** In 2019, defendant-appellant, Jamille Massingill ("Massingill"), was charged with carrying a concealed weapon and attempted tampering with evidence, both felonies of the fourth degree. He was convicted after a jury trial and

sentenced to two years in prison. He now appeals his convictions. We find merit to the appeal and vacate his convictions.

{¶ 2} On September 20, 2019, Cleveland Police Officers Allen Gera ("Officer Gera") and Nicole Corea ("Officer Corea") were driving in the vicinity of East 79th Street and Lockyear Avenue when they heard multiple gunshots. The officers observed a man on the sidewalk walking westbound down Lockyear Avenue. The officers testified that the man, later identified as Massingill, had "what appeared to be a firearm in his right hand." The officers saw Massingill tuck the weapon into the lower back portion of his pants and walk behind a house. Officer Gera testified that when they first observed Massingill they were at a distance from him spanning from the witness stand to the wall across the hall outside the courtroom.

{¶ 3} The officers exited their zone car and Massingill quickly reappeared from the back of the house. The officers drew their weapons and patted down Massingill. He immediately took the officers to the backyard where the officers found a Glock 9 mm handgun on the ground. The clip had been removed from the weapon and a single bullet was next to the handgun. According to Officer Gera, the handgun was "clear," which meant the magazine had been released from the firearm and the slide had been racked to remove the round; there were no bullets in the firearm when the officers found it.

{¶ 4} Russell Sacket, a forensic scientist for the Cuyahoga County Regional Forensic Science Laboratory, confirmed that the firearm was operable.

**{¶ 5}** Massingill testified that he went to a friend's house after work on the day in question. He consumed eight beers over the course of the evening and admitted he was "drunk" when he began to walk home. On his walk home, a man he knew as "Dan" approached him and told him to "lay it all down," that Massingill testified, meant Dan was attempting to rob him. According to Massingill, Dan raised a handgun to Massingill's head and Massingill wrestled the handgun away from Dan. While disarming Dan, the firearm discharged. Massingill was able to wrestle the weapon away from Dan, who then ran away. According to Massingill, he went behind a house, took the clip out of the handgun, removed the bullet from the clip, placed the firearm on the ground, and walked back to the front of the house, where he encountered police.

**{¶ 6}** After he was patted down, Massingill immediately led the officers to where he had placed the weapon. Massingill testified that he went to the back of the house and unloaded the firearm so "if someone found it, a kid or child or someone found it, that they would not be able to use it to harm theirself. [sic]" He further testified that he did not want to approach police with the weapon in his hand: "I'm a Black male. Neighborhood I live in is dangerous. Officer of law see someone with a weapon, first thing they might do is shoot. And it's a lot of innocent people that's have been shot by officers and killed for no reason, and I did not want to be one of those persons."

**{¶ 7}** Massingill admitted he had a prior criminal record.

**{¶ 8}** The jury convicted Massingill of both counts and the trial court sentenced him to two years in prison. Massingill now appeals, and raises the following assignments of error for our review:

> I. The trial court erred by failing to grant the motion for judgment of acquittal because the state presented insufficient evidence to sustain a guilty verdict.
>
> II. The jury's guilty verdict for attempted tampering with evidence is against the manifest weight of the evidence.
>
> III. The trial court erred by failing to give the requested jury instruction on the defense of necessity.
>
> IV. The trial court erred by imposing consecutive sentences based upon findings that are not supported by the record.
>
> V. The trial court erred by failing to grant the proper measure of jailtime credit.

**{¶ 9}** Subsequent to oral argument, this court sua sponte ordered the parties to brief the following issues:

> The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend II. Sua sponte the parties are ordered to brief the application of the Second Amendment in the United States Constitution, and the corresponding right to bear arms in Article I, Section 4, of the Ohio Constitution to this case.
>
> Ohio is an open carry state. The parties are also to brief the application of the open carry of firearms in Ohio to this case.

**{¶ 10}** In the first assignment of error, Massingill contends that there was insufficient evidence to support his convictions.

**{¶ 11}** Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production

at trial is conducted. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Id.* at 386, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

{¶ 13} Massingill argues that he could not be convicted of carrying a concealed weapon because the weapon was not concealed — the butt of the gun was visible to the officers.

{¶ 14} R.C. 2923.12(A)(2) states that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * (2) A handgun other than a dangerous ordnance." Thus, the elements of carrying concealed weapons are: (1) no person shall (2) knowingly

carry or have (3) concealed on his or her person or (4) concealed ready at hand (5) any deadly weapon or dangerous ordnance.

{¶ 15} Ohio is an open carry state. Thus, in basic terms, in Ohio, it is generally legal to walk down the street and openly carry a handgun, but it is not legal for a person to walk down the street with a concealed handgun, unless one has a permit to do so. At issue in this case was whether Massingill was carrying a concealed weapon. The state posits that the handgun was concealed because Massingill put the handgun in his waistband and only the butt of the handgun was visible. Massingill argues that the handgun, or part of handgun, was visible to the police before and after he put it in his waistband.

{¶ 16} This court has previously held that "[a] weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed, who would come into contact with the possessor in the usual associations of life — absolute invisibility is not required." *State v. Carroll*, 8th Dist. Cuyahoga No. 62747, 1993 Ohio App. LEXIS 2934, 6 (June 10, 1993), citing *State v. Pettit*, 20 Ohio App.2d 170, 174, 252 N.E.2d 325 (4th Dist.1969).

{¶ 17} The state cited numerous cases to support its theory that Massingill was carrying a concealed weapon; each case the states cites to, however, is distinguishable from this case. In *Carroll*, the police drove up to the appellant and surrounded him. As one officer approached the appellant, the officer observed the back of a gun in the appellant's coat pocket, specifically testifying that he saw "the

back strap or the back part of the handle" of the gun. *Id.* This court upheld the appellant's conviction for carrying a concealed weapon finding that "[w]hen 'only part of the butt of the gun [is] in plain view' a jury may reasonably conclude it is concealed." *Id.*, citing *State v. Almalik*, 41 Ohio App.3d 101, 105, 534 N.E.2d 898 (8th Dist.1987).

{¶ 18} In *Almalik*, the weapon was seized as part of a traffic stop. The officer testified that the handgun was found under the driver's seat and "only part of the butt of the gun was in plain view." *Id.* Appellant was convicted of carrying a concealed weapon and this court upheld the conviction finding that a partially concealed weapon is "concealed" within the meaning of R.C. 2923.12. *Id.*

{¶ 19} In *State v. Gainer*, 8th Dist. Cuyahoga No. 81366, 2004-Ohio-2393, the weapon was also seized as part of a traffic stop. After the appellant told the officers there were no guns in the car and was placed in a zone car, an officer observed a handgun through the driver's side window — "approximately an inch of its white handle and 'a little bit of the rear' protruding out from under the vehicle's seat." *Id.* at ¶ 2. This court, citing *Almalik*, held that a partially concealed weapon is still considered concealed within the meaning of R.C. 2923.12. *Gainer* at ¶ 7.

{¶ 20} In *State v. Gilmore*, 8th Dist. Cuyahoga No. 59299, 1991 Ohio App. LEXIS 5372, 7 (Nov. 7, 1991), the police found a handgun in appellant's waistband after patting him down. This court held that the evidence in the case indicated that the weapon could be considered "partially concealed" because it was "shoved into" defendant's waistband and whether it was carried so that ordinary observation

would give notice of its presence was a question of fact to be resolved by the trier of fact; therefore, the appellant's conviction was not against the manifest weight of the evidence. *Id.*

{¶ 21} In *State v. Nelson*, 8th Dist. Cuyahoga No. 73289, 1999 Ohio App. LEXIS 600 (Feb. 25, 1999), this court upheld a conviction for carrying a concealed weapon when the appellant got out of the back seat of a car and officers observed a handgun "immediately to the left" of where the appellant had been sitting, concealed by a sweater vest, with only the butt of the handle and the metal portion of the back strap visible. *Id.* at 5-6.

{¶ 22} In *State v. Bozeman*, 8th Dist. Cuyahoga No. 57750, 1990 Ohio App. LEXIS 5372 (Dec. 6, 1990), a security guard observed the appellant pull a gun out of his jacket. This court determined there was sufficient evidence for the jury to determine the defendant's firearm was concealed when "only the butt of the firearm was discernable," noting that when the security guard initially observed the appellant, the appellant's firearm was partially concealed under the appellant's jacket or clothing and the appellant was in the process of taking the firearm out of his jacket. *Id.* at 6.

{¶ 23} In this case, Officers Gera and Corea testified that when they first approached the scene, they saw Massingill holding a handgun in his right hand. It was clearly discernible by ordinary observation by both officers, even though it was dark outside, the officers were in their zone car, and the officers were quite a distance from Massingill. Officer Corea testified that she saw Massingill put the

gun in the rear of his pants, but the gun was still visible: "Yes. You could see the butt of the gun hanging out [of the rear of his pants]."

{¶ 24} Unlike the cases cited to by the state, here, the handgun was visible to the officers upon initial approach — the officers first observed Massingill carrying the weapon in his right hand — and was also visible to the officers when he placed it in his pants. In *Carroll*, 8th Dist. Cuyahoga No. 62747, 1993 Ohio App. LEXIS 2934, the officer did not see the partial butt of the gun until after he got out of his zone car and approached the appellant on foot. In *Almalik*, 41 Ohio App.3d 101, 105, 534 N.E.2d 898, the officer did not see the weapon until the officer approached the car during a traffic stop. In both *Gainer*, 8th Dist. Cuyahoga No. 81366, 2004-Ohio-2393, and *Nelson*, 8th Dist. Cuyahoga No. 73289, 1999 Ohio App. LEXIS 600, the officers did not see the weapon until after the appellants were out of their respective vehicles. Moreover, cases that concern traffic stops are further distinguishable from this case because those courts focused on different issues, e.g., warrantless search and seizure. *See generally Almalik* and *Gainer*.

{¶ 25} In *Gilmore*, 8th Dist. Cuyahoga No. 59299, 1991 Ohio App. LEXIS 5372, the appellant argued that his conviction for carrying a concealed weapon was against the manifest weight of the evidence. Under this assignment of error, we consider whether there was sufficient evidence to support Massingill's conviction. Thus, *Gilmore* is inapposite for purposes of our review of this assigned error. Even if we were to consider *Gilmore*, the case is distinguishable because the police in

*Gilmore* did not observe the partially concealed weapon until they patted down the appellant.

{¶ 26} Finally, we do not find that *Bozeman*, 8th Dist. Cuyahoga No. 57750, 1990 Ohio App. LEXIS 5372, is controlling. In *Bozeman*, the appellant was pulling his weapon out of his jacket when the security guard initially saw the appellant. In this case, Massingill was walking and openly carrying a firearm, which is legally permitted in this state.

{¶ 27} We note that the parties' main focus is on the period of time *after* Massingill placed the handgun in the rear of his pants with part of the butt of the gun visible. If the police had approached Massingill and solely observed him placing the handgun in the rear of his pants, perhaps our analysis would be different. But here, the police approached Massingill and observed him from their zone car, at night and from a great distance, walking and openly carrying a handgun in his right hand. What he did with the handgun after the officers observed him openly carrying it in his hand is ancillary to our analysis of this assignment of error.

{¶ 28} Even though Massingill had a prior criminal record, which he admitted to during trial, the state did not charge Massingill with having weapons while under disability, nor did the state present any evidence demonstrating that Massingill was under any type of disability or incapacitation that would prevent him from legally possessing a firearm or incapacitation that would prevent him

from legally possessing a firearm in accordance with Ohio's status as an open carry state.

{¶ 29} In light of the above, there was insufficient evidence supporting the essential element of concealment pursuant to R.C. 2923.12. Massingill's conviction for carrying a concealed weapon is hereby vacated.

{¶ 30} Massingill next contends that there was insufficient evidence to support his conviction for attempted tampering with evidence. As it applies to this case, R.C. 2921.12(A)(1) states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * conceal * * * any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2923.02(A) codifies the crime of attempt and states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." A criminal attempt has been committed "'when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his [or her] commission of the crime.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio 7247, 781 N.E.2d 980, ¶ 95, quoting *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus.

{¶ 31} The state relies on *State v. Shirley*, 8th Dist. Cuyahoga No. 107449, 2019-Ohio-1888. In *Shirley*, the police observed the defendant bending down and

placing something behind a garage. When he saw the police, the defendant fled the scene, but was later apprehended. The police later searched the area and discovered a firearm in a bucket behind the garage where they earlier observed the defendant. The majority opinion held that sufficient evidence was presented to support the defendant's conviction for tampering with evidence because hiding the firearm impaired its ability to be used as evidence. *Id.* at ¶ 25.

**{¶ 32}** *Shirley* is readily distinguishable from this case. Unlike the defendant in *Shirley,* Massingill did not hide the firearm, but rather left it in plain view. Unlike the defendant in *Shirley*, Massingill did not run away from the police, but rather approached the police with his hands up and fully cooperated with their commands. And unlike the defendant in *Shirley*, Massingill showed the police where the firearm could be found. Massingill did not take any steps, substantial or otherwise, to impair the firearm's "value or availability as evidence in such proceeding or investigation." In fact, the state's own forensic scientist testified that the firearm was still operable.

**{¶ 33}** Massingill testified that he went to the back of the house and unloaded the weapon so "if someone found it, a kid or child or someone found it, that they would not be able to use it to harm theirself [sic]." He further testified that he did not want to approach police with a weapon in his hand: "I'm a Black male. Neighborhood I live in is dangerous. Officer of law see someone with a weapon, first thing they might do is shoot. And it's a lot of innocent people that's

have been shot by officers and killed for no reason, and I did not want to be one of those persons."

{¶ 34} We have already concluded that there was insufficient evidence to support Massingill's conviction for carrying a concealed weapon. It is not hard to imagine why Massingill, a Black man, would not feel comfortable approaching police while carrying a handgun, even though he is legally allowed to openly carry a firearm in the state of Ohio.

{¶ 35} Based on the unique facts and circumstances of this case, Massingill's actions, coupled with insufficient evidence that he was carrying a concealed weapon, lead us to conclude that there is likewise insufficient evidence that he was attempting to tamper with evidence.

{¶ 36} Massingill's convictions were not supported by sufficient evidence. The first assignment of error is sustained. Massingill's convictions for carrying a concealed weapon and attempted tampering with evidence are hereby vacated.

{¶ 37} Because the first assignment of error is dispositive of this appeal and Massingill's convictions are vacated, the remaining assignments of error as well as the sua sponte constitutional issues raised by this court are moot. *See* App.R. 12(A)(1)(c).

{¶ 38} Judgment vacated; case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EMANUELLA D. GROVES, J., CONCUR