[Cite as *State v. Abdel-Haq*, 2026-Ohio-554.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO, :

    Plaintiff-Appellee, :

                           No. 114977

    v. :

ZAYD ABDEL-HAQ, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692862-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Alyssa Waite, Assistant Prosecuting
Attorney, *for appellee.*

Flowers & Grube, Louis E. Grube, and Kendra N. Davitt,
*for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Zayd Abdel-Haq appeals his conviction for felonious assault and the

attendant firearm specification arising from a shootout with a convenience store

clerk in which both men claimed to have acted in self-defense.  For the following reasons, we vacate the conviction and remand for further proceedings.

{¶ 2}   This case involves a basic question the State prematurely answered from the beginning: Which of the two persons who fired a weapon at each other acted in self-defense?  Abdel-Haq claims the named victim, a person he has known since childhood and knows to have brandished firearms at others in the past, inexplicably turned a benign interaction into threats of violence prompting Abdel-Haq to draw his legally carried firearm out of fear.  The victim, the convenience store clerk, claims Abdel-Haq fired or attempted to fire a weapon first, prompting the victim to return fire.  The State, throughout the investigation and prosecution of this case, determined that the victim acted in self-defense and Abdel-Haq was the instigator.

{¶ 3}   The shooting occurred when Abdel-Haq and his girlfriend, Allyianna Maroulis, were inside the convenience store purchasing some items.  Abdel-Haq frequented that particular store and was known to other employees.  He was friends with Abdel-Haq's cousin.  According to Abdel-Haq's trial testimony, the victim had purchased clothing recently from him; he worked in the family clothing store and remembered the victim discussing how to carry his firearm in the jeans being purchased.  The victim refused to admit knowing Abdel-Haq at trial.

{¶ 4}   Right before the shooting, Maroulis was attempting to purchase a vape device but did not have any identification.  The victim declined to sell to her, and according to everyone, that conversation was benign.  Abdel-Haq then entered

the store to purchase some items himself. The victim does not remember anything about the interaction besides Maroulis being unable to present identification. For unknown reasons, according to the victim's testimony, he left the counter area and approached Abdel-Haq standing face-to-face. He claims to have been going to get something, like a bottle of water, when he confronted Abdel-Haq. The victim could not testify as to anything said between the two men. Abdel-Haq, Maroulis, and an off-duty employee testified that the victim was acting aggressively, so much so that the employee intervened to try and get the victim to return to his position behind the counter. The victim's testimony was riddled with incomplete answers. Even when prodded on direct, the victim was unable to remember what happened on the day in question or what caused him to confront Abdel-Haq so aggressively. The State primarily relied on the silent surveillance footage of the incident — a video recording of the store's surveillance monitor — as it replayed the footage for police officers.

{¶ 5} Abdel-Haq, being familiar with the victim as a friend of the family, testified to being concerned when he was approached. According to him and Maroulis, the victim was threatening to kill him and went from calm and peaceful to aggressive for no reason, fitting the victim's known reputation. In addition, he believed that the victim was always armed — a belief that turned out to be accurate because the weapon used by the victim was his own. When the employee was able to persuade the victim to back away and return behind the counter, Abdel-Haq removed a handgun from his pocket and kept the gun at his waist pointed down at

the ground. Abdel-Haq maintained a concealed-carry permit, and nothing else precluded him from possessing or holding a firearm in the convenience store at that time — Ohio is, and has always been, an open-carry state permitting people to openly carry firearms in their hands. *State v. Massingill*, 2021-Ohio-2674, ¶ 15 (8th Dist.) (vacating defendant's conviction for possessing concealed weapon because the defendant was holding the handgun in his hand when the officers encountered him on the street). The victim further claimed to have been aware of the weapon, testifying that it was in Abdel-Haq's hand the entire time he shopped.

{¶ 6} According to Abdel-Haq, he pulled the handgun from his pocket based on his fear of the victim and the nature of the interaction as it was unfolding. The victim, for his part, could not testify as to anything said by Abdel-Haq that caused him to react and aggressively approach the couple despite the State's questioning; that is, until on cross-examination when he finally claimed that Abdel-Haq threatened him as soon as he entered the store: "He told me that this was his hood and that he doesn't — I don't know where I'm at, and he pulled his gun out on me and he pointed it at me." Tr. 244:16-19. The video evidence again did not corroborate the victim's belated testimony.

{¶ 7} Also on cross-examination, defense counsel asked the victim whether he "ever carr[ied]" the gun he owned, to which the victim unequivocally answered "no." Tr. 236:3-8. The victim claimed to have kept it in a safe. *Id.* After the victim made that statement, the defense sought to question the victim about an earlier road-rage incident in which the victim pleaded guilty to a misdemeanor offense

based on his brandishing a firearm at an innocent motorist by asking if he ever pointed the gun at a person. Before getting to that question, the State objected. The trial court sustained an objection based on Evid.R. 404(B). Similar to that evidentiary decision, when Abdel-Haq was asked about his subjective fear of the victim on direct during the defense's case in chief, the trial court again precluded him from being asked about his knowledge of the prior incident.

{¶ 8} According to the video recording of the incident, which contained no audio, the victim approached Abdel-Haq from behind the counter and stood face-to-face with him in an aggressive manner. The other employee can be seen intervening, causing the victim to return to the counter. After that confrontation, Abdel-Haq drew his handgun from his right pocket but kept it at his side and pointed down. He begins to back away from the victim, towards the exit, with the firearm still pointed at the ground, held at his waist. The victim is seen gesticulating behind the counter. As Abdel-Haq nears the door, he chambers a round with the gun pointed down and away from the victim (by pulling the slide backwards on the semi-automatic handgun with his other hand) but returns the weapon to his right side, pointed down at waist level. He begins to turn towards the door. That is the moment when the victim reaches for his loaded weapon, which was under the counter. The victim immediately chambers a round while aiming the handgun at Abdel-Haq and appears to shout something. The victim fires one shot hitting the window behind Abdel-Haq, who ducks outside the door, but behind the glass-windowed exterior wall of the building. He stands up and steps into the doorway raising his firearm

and then discharges several rounds in response as he is standing in the doorway. No one was physically injured.

{¶ 9} Abdel-Haq and Maroulis left the scene but returned after Abdel-Haq discussed the situation with his father. Police officers were told by the victim that Abdel-Haq fired first, causing the victim to grab his weapon and fire in response. This led to Abdel-Haq's immediate arrest. The investigation did not change the State's conclusion that the victim acted in self-defense despite his initial aggression in approaching Abdel-Haq as demonstrated by the video surveillance. *But see State v. Gaston*, 2013-Ohio-2331, ¶ 17 (8th Dist.) (A person cannot provoke an assault or voluntarily enter an encounter and then claim a right of self-defense after the other person responds with violence.); *State v. Sekic,* 2011-Ohio-3978, ¶ 14 (8th Dist.), quoting *State v. Nichols*, 2002-Ohio-415 (4th Dist.) (recognizing that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense when the other person responds). After the jury returned a guilty verdict, the trial court sentenced Abdel-Haq to the minimum non-life indefinite term of two to three years, consecutive to the three-year term imposed on the firearm specification. This timely appeal followed.

{¶ 10} Abdel-Haq's second assignment of error is dispositive, and therefore, the analysis begins and ends there. He claims that the trial court erred by limiting the scope of cross-examination after the victim opened the door to being impeached with his prior conduct that directly contradicted his trial testimony and also erred by excluding Abdel-Haq's testimony regarding his knowledge of the victim's prior

act of brandishing a firearm in presenting evidence of his state of mind at the time of the shooting.

{¶ 11} Before trial, the State filed a motion in limine to preclude the defense from introducing evidence of the victim's prior conduct in which he brandished a firearm at innocent people, one such incident resulting in a misdemeanor conviction. The State's pretrial argument relied on Evid.R. 404(B), which provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." As the State conceded in that motion, in the State's own words, a "defendant can testify to the personal knowledge of [v]ictim's prior violence to show a Defendant's state of mind when self-defense is asserted," citing *State v. Ajumu*, 2011-Ohio-2520 (8th Dist.), and *State v. Fitch*, 2002-Ohio-4891 (8th Dist.). In *Ajumu*, the defendant "was entitled to testify about 'his knowledge of specific instances of the victim's prior conduct' in order to establish his state of mind at the time of the incident." *Id.* at ¶ 11, quoting *State v. Baker*, 88 Ohio App.3d 204, 208 (9th Dist. 1993); *Fitch* at ¶ 28 (same).

{¶ 12} That assertion of law is accurate, but the State inexplicably objected to Abdel-Haq's attempt to testify as to his knowledge of the victim's prior violence during the defense's presentation of evidence in support of the self-defense claim. The State may have been focusing solely on the 404(B) issue without remembering its earlier acknowledgement of the circumstances at play when self-defense is raised and at issue.

{¶ 13} "[C]ourts have consistently held that a defendant arguing self-defense may testify about his knowledge of specific instances of the victim's prior conduct in order to establish the defendant's state of mind at the time of the incident" and also may testify as to his knowledge of the victim's reputation for violence. (Citations omitted.) *Baker* at 208; *see also State v. Carlson*, 508 N.E.2d 999 (8th Dist. 1986) (trial court errs by excluding a defendant's testimony of knowledge of the victim's prior acts of violence of which the defendant is aware at the time of the incident); *State v. Wadlington*, 2024-Ohio-1268, ¶ 24 (8th Dist.) (citing *Baker* and *Carlson*). The only caveat is that testimony may not be introduced to demonstrate that the victim is the aggressor when the defendant is unaware of the previous acts. *State v. Barnes,* 94 Ohio St.3d 21, 23-25 (2002). The State does not claim that *Barnes* is applicable or relevant to this appeal.

{¶ 14} Despite this authority permitting a defendant to testify as to the victim's prior acts of violence known at the time of the claimed use of self-defense, the trial court nonetheless precluded Abdel-Haq from testifying about his knowledge of the victim's prior conduct. That proffered testimony was both relevant and directly related to the self-defense claim advanced at trial. Importantly, the State does not respond to Abdel-Haq's appellate argument on this point and instead solely focuses on the issues with the cross-examination of the victim. As a result, the State failed to present an argument in support of overruling Abdel-Haq's first assignment of error. S*ee State v. Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting

in part) (the parties, not an appellate court, bear the burden of advancing and supporting an argument with citations to legal authority and facts in the record).

{¶ 15} We recognize, however, that the Ohio Supreme Court has also concluded that "[t]he State was not required to argue harmless error before the court of appeals for that court to engage in the harmless-error analysis." *State v. Roberts*, 2025-Ohio-5120, ¶ 133. In *Roberts*, the Ohio Supreme Court noted that the State had not waived its argument pertaining to the harmless-error doctrine because the appellate panel sua sponte addressed the issue.[1] *Id.* Abdel-Haq's testimony concerning his knowledge of the victim's use of a firearm goes to the heart of his self-defense claim. That testimony would have been necessary to establish Abdel-Haq's state of mind at the time of the incident and explain his conduct. The impact this

---

[1] Interpreting *Roberts* to create a bright-line rule that an appellate panel must sua sponte dispel harmless error even if the State fails to present arguments in favor of its burden would seemingly stand at odds with earlier precedent establishing that the State's failure to demonstrate harmless error requires the appellate court to reverse the conviction if error is found. *State v. Perry*, 2004-Ohio-297, ¶ 15; *State v. Bond*, 2022-Ohio-4150, ¶ 7; *State v. Jones,* 2020-Ohio-3051, ¶ 18. If the State fails to argue that an error was harmless, it necessarily failed to demonstrate that the error did not impact a substantial right. Because the burden is on the State, an appellate panel cannot sua sponte present arguments to fill a void to otherwise sustain the conviction. *Quarterman* at ¶ 19, citing *Bodyke* at ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); *see also Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, quoting *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15 ("'[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties.'"); App.R. 16(A)(7). It could be concluded that *Roberts* does not require an appellate court to sua sponte dispel harmless error, but instead, in undertaking the harmless-error analysis, it suffices to recognize that the State failed to meet its burden. This interpretation would harmonize *Roberts* at ¶ 133 with *Perry* at ¶ 15. But we need not resolve the tension between *Roberts* and *Perry* in this case in light of our conclusion that the error is not harmless upon our review of the record.

testimony may have had on the jury and ultimate verdict would have been significant as it went to the heart of the claims being asserted. We are unable to conclude that the evidentiary errors are harmless.

{¶ 16} In addition to precluding Abdel-Haq from testifying as to the victim's prior misconduct with a firearm, the trial court, again relying on Evid.R. 404(B), also precluded the defense from cross-examining the victim on past instances of his brandishing a weapon even after the victim testified untruthfully about not "ever" carrying a firearm in public, which he claimed to always leave in a safe.

{¶ 17} Although Evid.R. 404(B) would preclude the defense from introducing the victim's past misconduct as substantive, extrinsic evidence, it does not preclude the defense from impeaching the victim after the victim opens the door by untruthfully answering questions. *See State v. Chandler*, 2017-Ohio-8573, ¶ 8 (8th Dist.), citing *State v. Hamilton*, 77 Ohio App.3d 293, 299 (12th Dist. 1991) (witness's credibility may be impeached through the intrinsic means of cross-examination under Evid.R. 608(B) even if the evidence would be precluded under Evid.R. 404(B) if attempted to be independently introduced); *see also State v. Hartman*, 2012-Ohio-745, ¶ 10 (9th Dist.); *Mullett v. Wheeling & Lake Erie Ry. Co.*, 2003-Ohio-3347, ¶ 13 (8th Dist.). The issue is not whether the defense could have introduced substantive evidence under Evid.R. 404(B) to prove that the prior conduct occurred, but whether the defense had the right to impeach the victim with a follow-up question based on a good-faith belief in the basis for the question — that the victim lied to the jury about not "ever" carrying his firearm because he did in fact

carry his handgun in public as demonstrated by previously being convicted of brandishing the firearm in a road-rage incident. At the very least, the defense was entitled to ask the question and receive an answer. What would be permissible after that is outside the scope of this appeal.

{¶ 18} In this appeal, the State solely claims that the question itself violated Evid.R. 608(B) and thus supported the trial court's ruling irrespective of the trial court's reliance on Evid.R. 404(B) at trial. Evid.R. 608(B) is not applicable. That rule precludes the introduction of extrinsic evidence of "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness" and has no bearing on whether the defense, faced with a potential mistruth by the victim, can ask impeachment questions once the door is opened by the testifying witness. *State v. Boggs*, 63 Ohio St.3d 418, 421 (1992) (Evid.R. 608 does not preclude asking a witness a question concerning prior acts, even if those other acts cannot be proven through extrinsic evidence).

{¶ 19} The victim opened the door to the question regarding his prior conduct by untruthfully responding to a question legitimately posed by defense counsel. Tr. 236:5-8. At the least, Abdel-Haq was entitled to an attempt to impeach the victim by questioning the victim on his conduct involving the brandishing of a firearm in a road-rage incident prior to the events at the convenience store, conduct that contradicted his statement of not "ever" carrying his firearm. *See State v. Burns*, 2024-Ohio-1669, ¶ 25 (10th Dist.) (The trial court did not err in permitting the State to introduce other acts evidence under Evid.R. 404(B) because defense

counsel opened the door by questioning the victim about her fear of the defendant based on past acts.).  Again, the State has not discussed, nor claimed, that the error in limiting the defense's attempt to impeach the victim following a potentially untruthful answer is harmless, and in light of the above discussion, we cannot conclude that the error is harmless.

{¶ 20} Based on the foregoing, the trial court erred by precluding Abdel-Haq from questioning the victim about his prior conduct in light of the victim's contrary statement and testifying regarding his state of mind with respect to the self-defense claim.  As a result, Abdel-Haq's conviction is vacated and the matter remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EMANUELLA D. GROVES, J., CONCUR